[No. B123974. Second Dist., Div. One. Apr. 27, 1999.]

JACK HERMAN, Plaintiff and Appellant, v.
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION
AUTHORITY, Defendant and Respondent.

**COUNSEL**

Mastagni, Holstedt & Chiurazzi and Richard J. Chiurazzi for Plaintiff and Appellant.

Lloyd W. Pellman, County Counsel, and Benjamin J. Sterling, Deputy County Counsel, for Defendant and Respondent.

OPINION

**ORTEGA, Acting P. J.**—Jack Herman was a lieutenant with Los Angeles County Metropolitan Transportation Authority's (MTA) police force. MTA sent Herman a notice of termination letter. Herman obtained counsel through his labor organization and demanded an MTA administrative hearing, at which Herman was represented by counsel. After a lengthy hearing, the arbitrator recommended that Herman be reinstated without backpay.

However, MTA rejected the recommendation and fired Herman. MTA sent a termination letter dated July 28, 1997, mailed with a proof of service on July 30, 1997, to Herman's attorney, Mark Kruger. The letter contained a required warning that Herman had to file any petition seeking judicial review of his firing within 90 days of the date of mailing of the termination letter. (Code Civ. Proc., § 1094.6, subds. (a), (b).)[1] Kruger received the letter and service proof.

However, MTA did not send the letter to Herman.[2] Herman filed his administrative mandamus petition on November 6, 1997, a few days beyond the 90-day limitations period.[3] These facts are undisputed.

---

[1]All further undesignated section references are to the Code of Civil Procedure. "(a) Judicial review of any decision of a local agency . . . may be had pursuant to Section 1094.5 . . . only if the petition for writ of mandate pursuant to such section is filed within the time limits specified in this section. [¶] (b) Any such petition shall be filed not later than the 90th day following the date on which the decision becomes final. . . . If there is a provision for a written decision . . . the decision is final for purposes of this section upon the date it is mailed by first-class mail, postage prepaid, including a copy of the affidavit or certificate of mailing, *to the party seeking the writ.* . . ." (§ 1094.6, subds. (a), (b), italics added.)

[2]As part of his demurrer opposition, Herman declared that MTA sent many earlier notices and letters to him personally. Herman argues that labor union contracts and member benefit agreements often do not entitle a member who was represented during agency proceedings to continued representation in a later civil action. Members may need to reapply for such union-supplied representation. Herman declared that he did not know until September 1997, that the same firm would represent him in the petition. Herman suggests this as another reason why notice to Kruger should not be equated with notice to him. Herman also notes that his petition was filed by a lawyer other than Kruger. MTA notes that Kruger and the later lawyer worked for the same firm. The trial court emphasized in its decision that an attorney of record must file a substitution before he can cease representation, thus requiring him to communicate the notice to Herman. However, those rules apply to commenced litigation. Neither the trial court nor the parties cite authority that would have required Kruger to continue to represent Herman for the subsequent petition unless Kruger filed a substitution or withdrawal notice.

[3]For the first time in his reply brief, Herman notes the trial court stated that Herman sent his petition and supporting papers by Federal Express on October 29, 1997, and that the documents were received by the clerk on October 30. The clerk refused to file them because they failed to conform to the Los Angeles Superior Court rules, in that they "did not have a 'blueback' as required by Los Angeles Rule 2.0(d); they also did not have the requisite

MTA demurred to the petition, arguing it was barred by section 1094.6's limitations period because service on Herman's lawyer satisfied the statute's service requirement.[4] In opposition, Herman urged two related grounds: (1) the statute requires that the termination notice be sent to the party, and sending it to the party's lawyer cannot substitute for service on him; and (2) the statute requires that the notice sent to the party contain the 90-day limitations period warning, and since MTA did not send Herman the notice, it also failed to notify him (as opposed to Kruger) of the limitations period.

The trial court sustained MTA's demurrer with leave to amend. When Herman could not amend his petition to demonstrate compliance with the statute, the trial court granted MTA's dismissal motion on the same ground and denied the petition. Herman appeals.

We agree with Herman and conclude section 1094.6's 90-day limitations period applies only if the required notice is served on the party, and that service on the party's lawyer does not trigger the 90-day period. Because the trial court erred in its contrary conclusion, we reverse and remand the case for the trial court to reinstate the petition. Because of our conclusion, we need not address Herman's second contention.[5]

---

'Certificate of Assignment' as required by Los Angeles Rule 9.2(f), and the documents were not presented separately." Assuming MTA's mailing the notice to Kruger began the 90-day limitations period, Herman claims the petition would have been timely if the clerk had filed it on October 30. Herman cites *Carlson* v. *Department of Fish & Game* (1998) 68 Cal.App.4th 1268, 1270 [80 Cal.Rptr.2d 601], which holds that "the local superior court may not condition the filing of a complaint on local rule[s]" if the "complaint complies with state requirements[.]" Herman does not ask us to reverse the trial court ruling dismissing his petition on this ground. At oral argument, MTA correctly responded that the petition would have been untimely even if the clerk had filed it on October 30: if July 30 was counted as the 1st day of the 90-day period, October 30, a Thursday, was the 93d day; if July 30 was day 0, October 30 was the 92d day. Section 1094.6, subdivision (b) expressly states that section 1013's five-day filing extension granted when service is by mail "does not apply to extend the time, following deposit in the mail of the decision or findings, within which a petition shall be filed." In any event, because Herman first mentioned these facts and *Carlson* in his reply brief, we do not consider this argument. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 616, pp. 647-648.)

[4]MTA also demurred that the petition failed to state adequate facts to constitute a cause of action. The trial court expressly did not reach that issue, although its ruling suggested that it would overrule the demurrer on that ground. We do not consider this second ground.

[5]We reject MTA's argument that Herman's attorney's statement below that the termination became final on July 30, 1997, and Herman's concession that the service proof was dated July 30, 1997, constitute admissions of facts contrary to those in the petition and bind Herman to a concession that his petition was untimely. While factual allegations in a petition that are contradicted by petitioner's statements in other related documents will be rejected (*Dodd* v. *Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626-1627 [272 Cal.Rptr. 623]; *Del E. Webb Corp.* v. *Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604-605 [176

## DISCUSSION

### A. *Standard of Review.*

██ "The function of a demurrer is to test the sufficiency of the complaint by raising questions of law. [Citation.] The complaint must be given a reasonable interpretation and read as a whole with its parts considered in their context. [Citation.] A general demurrer admits the truth of all material factual allegations of the complaint; plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court. [Citation.] 'As a reviewing court we are not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court.' [Citation.]" (*Aragon-Haas* v. *Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 238-239 [282 Cal.Rptr. 233]; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] . . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

### B. *Section 1094.6 Requires Service on the Party to Trigger the 90-day Limitations Period.*

As quoted in footnote 1, *ante,* section 1094.6 requires that any petition seeking judicial review of a local agency decision must be timely filed (subd. (a)). "Any such petition shall be filed not later than the 90th day following the date on which the decision becomes final. . . . If there is a provision for a written decision . . . the decision is final . . . upon the date it is mailed by first-class mail, postage prepaid, including a copy of the

Cal.Rptr. 824]), that is not the case here. The first statement is a legal conclusion, not a fact; the second fact is undisputed and does not defeat Herman's legal claim. Both statements are consistent with Herman's factually undisputed argument that *he* was not served by mail as required by the statute.

affidavit or certificate of mailing, *to the party seeking the writ. . . ."* (§ 1094.6, subd. (b), italics added.)

■ The issue before us is one of statutory construction. Herman argues the statute on its face requires service on a party, not on the party's attorney. Herman further argues that other statutes distinguish certain notices and acts which may be given to or done by attorneys from those which must be given to or done by parties, thus demonstrating the Legislature's knowledge of the distinction and requiring us to conclude that the statutory language was intentional and mandatory. Herman buttresses his argument with legislative history.

MTA essentially concedes that section 1094.6 on its face requires service on the party. However, MTA responds that the statute should not be read literally. MTA cites general provisions that note that in litigation, service on a party's attorney constitutes service on the party, and that, as agents of their clients, the attorney's knowledge is imputed to the client. We agree with Herman and reject MTA's contrary arguments.

"The interpretation of a statute . . . is a question of law . . . ." (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) " 'Interpretation and applicability of a statute or ordinance is clearly a question of law.' [Citation.] It is the duty of an appellate court to make the final determination from the undisputed facts and the applicable principles of law. [Citation.]" (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].) Thus, we interpret the challenged statute de novo as a matter of law.

■ Statutory interpretation involves a three-step analysis. "First, a court should examine the actual language of the statute. [Citations.] Judges, lawyers and laypeople all have far readier access to the actual laws enacted by the Legislature than the various and sometimes fragmentary documents shedding light on legislative intent. More significantly, it is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's

'legislative history.' [¶] In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning [citations]. [¶] If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. [Citations.]

"But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history. [Citations.] [¶] The final step—and one which we believe should only be taken when the first two steps have failed to reveal clear meaning—is to apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable [citations]." (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238-1240 [8 Cal.Rptr.2d 298].) We apply these undisputed rules to the facts and statute before us.

In analyzing the statute, we must follow the " ' "cardinal rule of construction . . . that . . . a construction making some words surplusage is to be avoided." ' [Citation.]" (*State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 776-777 [144 Cal.Rptr. 758, 576 P.2d 473]; 1 Witkin and Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 36(2), p. 45.) Moreover, "our primary purpose is to ascertain and effectuate [legislative] intent . . . . [Citations.] 'To determine intent, " 'The court turns first to the words themselves for the answer.' " ' [Citation.]" (*In re Littlefield* (1993) 5 Cal.4th 122, 130 [19 Cal.Rptr.2d 248, 851 P.2d 42].) Of course, "[i]f the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.]" (*People* v. *Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1].)

Of particular relevance to our analysis is that here we construe a limitations statute. ■ " '[S]tatutes of limitation are to be viewed favorably as affording to parties who may[,] *by the lapse of time*, have lost the ability to procure evidence, repose and security from *stale* demands.' [Citations.]" (*People* v. *Universal Film Exchanges* (1950) 34 Cal.2d 649, 659 [213 P.2d 697], italics added [state's attempt to assess additional taxes 10 years after returns were filed was time-barred].)

On the other hand, "[s]tatutes of limitation are designed to prevent the resurgence of *stale claims after the lapse of long periods of time as a result of which loss of papers, disappearance of witnesses, feeble recollections, make ineffectual or extremely difficult a fair presentation of the case. But they are not intended as defenses to just demands of comparatively recent origin. When*

*the facts relied upon leave it clearly in doubt whether the case is within the statute pleaded courts should not indulge a strained construction in order to support the plea.* [Citation.]" (*County of L. A. v. Security First Nat. Bank* (1948) 84 Cal.App.2d 575, 580 [191 P.2d 78], italics added [rejecting limitations defense]; accord, *In re Marriage of Flack* (1988) 200 Cal.App.3d 18, 21 [245 Cal.Rptr. 745].)[6]

First, as already noted, the statutory language on its face requires service on the party, not on the party or its lawyer. MTA essentially concedes the statute, if read literally, requires service on the party.

Of course, statutes must be read in their context, both of the particular act of which it is a part and of the overall statutory scheme. The MTA argues that generally, service on a party's attorney constitutes service on the party. ". . . Notices and other papers *may* be served upon *the party or attorney* in the manner prescribed *in this chapter, when not otherwise provided by this code. . . .*" (§ 1010, italics added.)

However, Herman correctly notes section 1010 applies to civil actions, and that no such action has been filed where an agency simply gives notice of its own decision. In addition, MTA's argument ignores Herman's declaration that he did not know that he would be represented on his petition until two months after MTA sent Kruger the notice. Moreover, the section expressly notes that it does not apply where other sections require service on a party, as does, according to Herman, section 1094.6.

MTA cites *El Dorado Palm Springs, Ltd.* v. *Rent Review Com.* (1991) 230 Cal.App.3d 335, 347 [281 Cal.Rptr. 327]: "A 'direct' notice is one which is communicated forthwith and in a straightforward manner to a party *or that party's recognized agent (e.g., a party's attorney during the proceeding in question)* as soon as the administrative decision has become final . . . ." (Italics added.) However, while *El Dorado* interpreted the notice provisions of section 1094.6, there the challenged administrative decision was never communicated to anyone, party or attorney. The court did not consider the issue before us or section 1094.6's language that the notice be served on the party. Likewise, *Cummings* v. *City of Vernon* (1989) 214 Cal.App.3d 919 [263 Cal.Rptr. 97] assumed without discussing or deciding that notice to the party's attorney satisfied section 1094.6. In *Cummings*, the city sent notice to Cummings's attorney, who filed the petition less than 90 days later. *Cummings* held the petition had to be filed within 90 days of the mailing of the

---

[6]See 3 Witkin, California Procedure (4th ed. 1996) Actions, sections 408-411, pages. 513-520, for a general discussion of the appropriate standard for construing limitations statutes.

notice, not within 90 days of the decision. Thus, those cases neither address nor resolve our issue.

■ MTA also relies on the general agency principle that an attorney is his client's agent, and that the agent's knowledge is imputed to the principal even where, as is undisputed here, the agent does not actually communicate with the principal, who thus lacks actual knowledge of the imputed fact. (Civ. Code, §§ 2330, 2332; *Powell* v. *Goldsmith* (1984) 152 Cal.App.3d 746, 750-751 [199 Cal.Rptr. 554]; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 99, pp. 97-98.) This principle applies to the attorney-client relationship. (*Freeman* v. *Superior Court* (1955) 44 Cal.2d 533, 537-538 [282 P.2d 857].) In civil cases, " '[t]his constructive notice, when it exists, is irrebutable. It is not merely *prima facie* evidence, for then it could be rebutted. . . .' [Citation.]" (*Powell* v. *Goldsmith, supra,* 152 Cal.App.3d at p. 751.) ■ Herman does not dispute this principle, but argues it cannot trump section 1094.6's express language and statutory history.[7]

Section 1094.6, subdivision (f) states: "In making a final decision as defined in subdivision (e), the local agency shall provide notice to the party that the time within which judicial review must be sought is governed by this section. [¶] As used in this subdivision, 'party' means an officer or employee who has been suspended, demoted or dismissed; a person whose permit, license, or other entitlement has been revoked or suspended, or whose application for a permit, license, or other entitlement has been denied; or a person whose application for a retirement benefit or allowance has been denied." This section supports Herman's claim that the notice must be to a party, not to a party's attorney, because had the Legislature intended that notice could be made on a party *or* his attorney, it could have said so, as it did in section 1010 governing notice in civil actions.

Similar provisions in the Administrative Procedure Act (Gov. Code, § 11500 et seq.) likewise require that notice of an agency's intent to revoke,

---

[7]Even this general agency principle (enforcement of an agreement between an agent and a third party against the unknowing principal), however, does not apply where the principal must have actual knowledge. (2 Witkin, Summary of Cal. Law, *supra,* Agency and Employment, § 100, p. 98.) "The uncommunicated knowledge of an agent is not imputed to the principal for the purpose of determining whether he acted in good faith since the principal's good faith must be determined on the basis of facts of which he had actual knowledge. [Citations.]" (*Harte* v. *United Benefit Life Ins. Co.* (1967) 66 Cal.2d 148, 153 [56 Cal.Rptr. 889, 424 P.2d 329] [wife/agent's knowledge of her husband/principal's terminal cancer, of which he was unaware, not imputed to husband to defeat wife's claim as beneficiary of husband's life insurance policy which contained a good health clause].) Thus, to the extent section 1094.6, subdivision (b)'s notice requirement is meant to notify those affected by agency actions, the general agency principle may not be applicable where, as here, the person's lawyer is notified but the affected person still lacks knowledge.

suspend, limit or condition a right, authority, license or privilege and notice of the decision must be made on the party or person affected, without permitting such notice to be on the party's attorney (Gov. Code, §§ 11500, subds. (b) and (c), 11505, subds. (a) and (c), 11518), and make the decision effective only after such notice. (Gov. Code, § 11519.) Several cases hold that *mailed notice to the party* under these sections satisfies the notice provision, and *personal service* is not necessary. While these cases all discuss notice to the parties, and do not address our issue, they suggest that the statutes, with similar notice language to section 1094.6, require mailed notice to the party, implying that notice to a party's lawyer would not suffice. (See *Baughman* v. *Medical Board* (1995) 40 Cal.App.4th 398, 402 [46 Cal.Rptr.2d 498]; *Evans* v. *Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 966-972 [26 Cal.Rptr.2d 460]; *De Cordoba* v. *Governing Board* (1977) 71 Cal.App.3d 155, 158-160 [139 Cal.Rptr. 312].)

The express language of section 1094.6, its context, and the Legislature's decision in other contexts to require notice to be made on a party, compel us to accept Herman's argument.

Our review of the legislative history, while inconclusive, indirectly supports our conclusion. The section was adopted to narrow the former three- or four-year limitations period that governed such petitions, changing the former rule of *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351 [82 Cal.Rptr. 337, 461 P.2d 617]. The materials note that since the section adopted a much shorter limitations period, it was crucial that the party have proper notice.

Some of the materials note that represented parties' attorneys would immediately be aware of appealable issues, but that notice to parties would provide notice even to those who are unrepresented: "In most cases, the person is represented by counsel at the quasi-judicial administrative hearing, and any reversible error will be quickly noted and produce a . . . [section] 1094.5 petition to the court. *But even if an attorney is not involved at the administrative level, the bill provides for express notice of the applicable time limitations in the written decision given to the person concerned.* . . ." (Mar. 14, 1975, letter from Sacramento County Counsel to Assembly Committee on Local Government re § 1094.6, added by Stats. 1976, ch. 276, § 1, p. 581, italics added.) This concern for notice to the party reflects what happened here: notice to the party's lawyer who represented him before the agency may not be communicated to the party.

Moreover, MTA does not claim that requiring notice to parties, whether represented or not, is more burdensome than notice to attorneys where the

party is represented. Indeed, a rule requiring notice to parties would eliminate the need to distinguish represented from pro se parties and resulting confusion as to the notice's recipient.

Finally, at oral argument MTA argued, without specific references, that legal ethics rules require notice to represented parties' lawyers rather than to the parties. The short answer is that section 1094.6 expressly requires notice to the parties. Moreover, MTA ignores our situation where one represented during his agency proceedings may not have counsel for later litigation.

Given the rules governing construction of limitations statutes, the express statutory language, overall statutory context, legislative history, and the lack of burden, we conclude the MTA should have provided notice to Herman. Having failed to do so, the 90-day limitations period never began to run. Thus, Herman's petition was timely filed, and the trial court erred in concluding otherwise.

We note that, even if notice to Kruger had been sufficient, requiring Herman to file his petition by October 27 or 28 (see fn. 3, *ante*), MTA does not argue the lapse of the few additional days between the applicable date and the actual filing date of November 6 prejudiced it in any way. Thus, neither laches nor other equitable concerns should bar Herman's petition.

## Disposition

We reverse the judgment. We remand the case to the trial court and instruct it to reinstate the petition. Herman is entitled to his costs on appeal.

Vogel (Miriam A.), J., and Masterson, J., concurred.

A petition for a rehearing was denied May 19, 1999, and respondent's petition for review by the Supreme Court was denied July 28, 1999.