Filed 6/23/14  Dumas v. JPMorgan Chase Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THOMAS STEVENS DUMAS, | C072651 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV27128) |
| v. | |
| JPMORGAN CHASE BANK, N.A. et al., | |
| Defendants and Respondents. | |

With the assistance of defendant loan brokers J & J Lending Corporation (J&J Lending) and Marko Acuna, plaintiff Thomas Stevens Dumas obtained a residential loan from defendant Paramount Residential Mortgage Group, Inc. (Paramount), secured by a deed of trust with defendant Mortgage Electronic Registration Systems, Inc. (MERS), listed as the beneficiary.  Dumas defaulted on the loan and later filed suit against the aforementioned defendants, as well as First Northern Bank and a later assignee of the deed of trust, defendant JPMorgan Chase Bank, N.A. (Chase).  Defendants Chase and MERS demurred to Dumas's second amended complaint for fraud, civil conspiracy,

1

negligence, violation of Business and Professions Code section 17200 et seq., violation of Civil Code section 2923.5, and wrongful foreclosure.[1]

Dumas appeals from the judgment of dismissal entered following the court's order sustaining the demurrer without leave to amend.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

"Because this case comes before us on appeal from a judgment sustaining a demurrer, we assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts.  [Citations.]"  (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883.)  We therefore take our facts from Dumas's complaint, submitted exhibits, and matters that we may judicially notice, as follows:

Dumas obtained a residential loan from Paramount for $685,000 in connection with a refinancing of his construction loan in June 2008.  The underlying construction loan was for $500,000, and Dumas wanted to obtain financing in the form of a 30 year, fixed-interest-rate note.

Dumas spoke with defendants J&J Lending and Acuna between April and June 2008 about obtaining a loan.  Acuna told Dumas he had a lender he would use to obtain financing.

These communications led to the loan from Paramount in June 2008.  The loan is a 30 year, adjustable-rate mortgage.  A deed of trust, recorded in July 2008, secured the loan.  MERS is the beneficiary of the deed of trust.

---

[1]  Dumas's initial complaint, filed in May 2010, was removed to the United States District Court for the Eastern District of California.  Eventually, the matter was remanded to state court in April 2012.  Dumas filed a second amended complaint in July 2012.

Dumas defaulted on the loan. A notice of default was recorded on October 27, 2009, listing the amount in arrears at $22,982.14. MERS assigned its interest in the deed of trust to Chase. The assignment was recorded in November 2009.

In December 2009 a substitution of trustee was recorded, substituting NDEx West, L.L.C. (NDEx), as trustee under the deed of trust. A notice of trustee's sale was recorded by NDEx on April 27, 2010.

In conjunction with the original loan, Acuna told Dumas the total monthly mortgage payment, including principal, interest, taxes, and insurance, would be $4,000. When Dumas asked for a lower mortgage payment, Acuna told him this was the best loan for which he could qualify. When Dumas signed the loan documents, he found the monthly payment was $4,949. Dumas questioned Acuna about the increase, and Acuna told Dumas to sign the documents and " 'he would take care of it later.' "

Acuna also told Dumas he would refinance the property in a few months for a lower interest rate and lower mortgage payment. According to Acuna, Dumas needed to act quickly and take the loan because Paramount was " 'willing to go for it.' "

In February 2009 Dumas's monthly mortgage payment increased from $4,949 to $6,171. Dumas believed the increase in monthly payments was due to Chase's including principal, interest, taxes, and insurance. That same month Certified Forensic Loan Auditors, LLC, completed a forensic audit report for Dumas. The audit revealed numerous violations.

The loan was an adjustable-rate mortgage; the interest rate was fixed for five years and then would adjust to a higher amount. The initial interest rate was 6.875 percent, which was a payment of $4,499.96. The cap or maximum rate was 11.875 percent, which was a payment of $6,980.16. According to Dumas, his debt-to-income ratio was higher than the normal underwriting standards when the loan originated, and after five years, when the payment increased, his debt-to-income ratio far exceeded normal standards.

3

Dumas alleged that defendants knew or should have known he would be unable to make the payments based on his income.

In addition, Dumas alleged defendants charged him excessive fees in the processing of the loan. The broker defendants received $15,698 in fees, and Paramount received $19,727.50. These totals comprise 5.17 percent of the loan amount and exceed market standards. Paramount, Dumas asserts, departed from basic principles of loan underwriting by lending without making a determination he could repay the loan from resources other than the property.

According to Dumas, there was no explanation about the full terms of the loan, including how the interest rate would be calculated, what the payment schedule would be, the risks and disadvantages of the loan, and the maximum amount to which the interest rate could increase. Dumas contends he was rushed when signing the loan documents and was pressured by Acuna into signing the documents. He did not understand what he was signing and relied on the representations by, and trust he placed in, defendants.

Dumas also alleges MERS is not a true beneficiary under any note or deed of trust but is an electronic "registry" of deeds of trust that are secretly traded, bundled, securitized, and resold. None of the defendants, Dumas contends, have any valid legal interest in the note, the deed of trust, or the property. Defendants are not the legal trustee, mortgagee, or beneficiary, nor are they authorized agents or entitled to payments.

Defendants Chase and MERS filed a demurrer. The trial court sustained the demurrer without leave to amend. Following entry of judgment, Dumas filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

The function of a demurrer is to test the sufficiency of the complaint by raising questions of law. We give the complaint a reasonable interpretation and read it as a whole with its parts considered in their context. A general demurrer admits the truth of

4

all material factual allegations. We are not concerned with the plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. We are not bound by the construction placed by the trial court on the pleadings; instead, we make our own independent judgment. (*Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819, 824.)

Where the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff can cure the defect with an amendment. If we find that an amendment could cure the defect, we must find the court abused its discretion and reverse. If not, the court has not abused its discretion. The plaintiff bears the burden of proving an amendment would cure the defect. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).)

**Fraud**

The elements of fraud are a false representation of a material fact, knowledge of the falsity, intent to induce another to rely on the representation, reliance, and resulting damage. Each element of fraud must be alleged factually and specifically. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792; *Tarmann v. State Farm Mut. Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 157.) To assert a cause of action for fraud against a corporation, a plaintiff must allege the name of the person who allegedly made the fraudulent representation, his or her authority to speak, to whom he or she spoke, what was said, and when it was said. (*Tarmann*, at p. 157.) General or conclusory allegations will not suffice to plead a cause of action for fraud. (*West*, at p. 793.)

Measured by these standards the fraud allegations against Chase and MERS fall woefully short.

All of the specific allegations of fraud concern Acuna. Dumas alleges Acuna falsely represented the mortgage payment amount and potential interest rate increase, cites statements made by Acuna about the subject loan, and alleges that material facts

concerning the loan were "required to be disclosed by Acuna, J&J [Lending] and Paramount." Dumas also states Acuna was an employee or agent of J&J Lending.

In contrast, allegations about MERS and Chase are vague and conclusory. Thus, MERS "was an integral part of this scheme to defraud and ratified the wrongful acts and participated in the fraud. MERS['s] role in the conspiracy was to act as a nominee and beneficiary" in the deed of trust. Therefore, MERS was a facilitator of the securitization process. Dumas contends Chase ratified the wrongful acts of defendants by claiming to have purchased the note and attempting to foreclose on the property. Such nonspecific, conclusory allegations cannot support a cause of action for fraud against defendants. Dumas provides no facts to support this assertion, nor does Dumas present any link between Acuna and MERS.

As the trial court observed, "Fraud must be specifically pled, with facts stating how, when, where, to whom and by what means any misrepresentations were made to a plaintiff. [Citation.] In addition, fraud allegations against a corporate defendant require the names of individuals who made misrepresentations, their authority to speak on behalf of the corporation, whom the individuals spoke to, what was said or written, and when it was said or written."

In addition, Dumas contends MERS and Chase, "despite having knowledge of these fraudulent acts, have attempted to foreclose on the Subject Property [and t]he interest, if any, in the Subject Note, Deed of Trust, and Property, acquired by Defendants Chase and MERS is subject to the illegality that taints the Subject Loan Transaction." This blanket assertion of defendants' alleged "knowledge of . . . fraudulent acts," without any detail as to how the knowledge was obtained or who amongst defendants obtained it, fails to satisfy the pleading requirements for fraud.

Nor did Dumas state a claim for fraudulent concealment. The elements for fraud based on concealment are concealment or suppression of material fact; the defendant must have been under a duty to disclose the fact to the plaintiff; the defendant must have

6

intentionally concealed or suppressed the fact with intent to defraud; the plaintiff must have been unaware of the fact and would not have acted as he did had he known of the concealment; and damages. (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870.) Liability for concealment is imposed where the defendant is in a fiduciary or other confidential relationship that imposes a duty of disclosure. (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 859.)

The court found no such duty: "the plaintiff fails to allege conduct on the part of the moving defendants that exceeds the normal scope of a money lender." Dumas takes issue with this analysis, arguing under *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 (*Jolley*) that courts no longer rely on the general rule that lending institutions do not owe a duty of care to borrowers. Instead, Dumas argues, *Jolley* requires the trial court to apply the factors enunciated in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*) to cases involving lenders and borrowers to ascertain whether the lender owes a duty of care to the borrower.[2] We disagree.

*Jolley* considered summary judgment against the borrower of a construction loan. The original lender lost the borrower's loan documents, made false representations about the amount of reimbursements under the loan, and failed to make the promised disbursements. As a result, construction was delayed. The bank that subsequently took over the original lender made representations that it was highly probable the borrower's construction loan would be modified to stave off foreclosure. The bank also told the

---

[2] *Jolley* sets forth the *Biakanja* factors: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." (*Jolley*, *supra*, 213 Cal.App.4th at p. 899.)

borrower it was likely that at the conclusion of the construction loan, the borrower would be able to roll the construction loan into a fully amortized conventional loan. The borrower, relying on those representations, borrowed heavily to finish the project. However, construction delays during loan modification negotiations prevented him from selling the property before the collapse of the housing market. Subsequently, the bank foreclosed and the borrower filed suit. The trial court granted summary judgment in favor of the lender defendants; the appellate court reversed. (*Jolley*, *supra*, 213 Cal.App.4th at pp. 877-881.)

In reversing, the *Jolley* court found triable issues of fact as to whether the defendants owed the plaintiff a duty of care. The court acknowledged that, as a general rule, a financial institution owes no duty of care to borrowers in a loan transaction that does not exceed the scope of its conventional role as a lender. (*Jolley*, *supra*, 213 Cal.App.4th at p. 898.) However, *Jolley* considered contemporary circumstances and noted: "We live, however, in a world dramatically rocked in the past few years by lending practices perhaps too much colored by shortsighted self-interest. We have experienced not only an alarming surge in the number of bank failures, but the collapse of the housing market, an avalanche of foreclosures, and related costs borne by all of society. There is, to be sure, blame enough to go around. And banks are hardly to be excluded." (*Id*. at p. 902, fns. omitted.) The court considered recent legislative and judicial efforts aimed at mitigating or ending some of the damage done by the housing collapse, including dual tracking, the practice of promising loan modifications while pursuing foreclosure. The court concluded these measures "indicate that courts should not rely mechanically on the 'general rule' that lenders owe no duty of care to their borrowers." (*Id*. at p. 903.) Given the facts before it, *Jolley* found the general rule inapplicable.

The court in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49 (*Lueras*) distinguished *Jolley*. The court concluded: "[A] loan modification is the

8

renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental . . . agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." (*Lueras*, at p. 67.)

We also find the present case distinguishable. Dumas alleges defendants fraudulently concealed that by entering into the loan he would suffer great harm and that his monthly payment increased because Chase included principal, interest, taxes, and insurance. Dumas does not allege the type of misleading, specific representations the court in *Jolley* found actionable.

### Civil Conspiracy

Dumas contends defendants conspired to implement a scheme to defraud and victimize him through predatory lending practices. The object of the conspiracy was to generate a high volume of subprime loans that could be bundled and sold while insulating defendants from the effects of default and foreclosure.

To establish liability of a defendant for wrongs committed by another as part of a conspiracy, a plaintiff must allege the formation and operation of the conspiracy, the wrongful act done pursuant to the conspiracy, and resulting damage. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.) The conspiring defendants must

9

also have actual knowledge that a tort is planned and agree to the scheme with knowledge of its unlawful purpose. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-785.)

Again, the court found Dumas's allegations wanting: "In actuality, there is no separate tort of civil conspiracy. This is legal doctrine that imposes liability on a person that shares with immediate tortfeasors a common plan or design. . . . The underlying fraud action fails to allege sufficient facts against the moving defendants; there is no connection between the defendants and the alleged acts. Further, the [second amended complaint] does not sufficiently allege that the moving defendants owe a duty to the plaintiff and that such a duty was breached."

Dumas's complaint fails to allege that defendants were aware of any common plan or design to commit a tort. Instead of providing specific allegations as to the nature of the conspiracy Dumas alleges took place, he simply states MERS "was an integral part of this scheme to defraud and ratified the wrongful acts and participated in the fraud" and that Chase "ratified the wrongful acts of the Defendants by claiming to have purchased the Subject Note and having attempted to foreclose on the Subject Property." This lack of specific facts as to the formation and operation of the alleged conspiracy dooms Dumas's cause of action for civil conspiracy.

### Negligence

Dumas contends his second amended complaint asserts facts in support of successor liability sufficient to find Chase was acting as either a continuation of the original lender, through succession, or as a servicer of the loan. According to Dumas, Chase elected to continue the fraudulent acts of the broker and engaged in acts beyond the scope of a regular moneylender. Dumas appears to argue these allegations support a cause of action for negligence against Chase.

A claim of negligence requires the plaintiff to establish the defendant's legal duty toward the plaintiff, the defendant's breach of that duty, injury to the plaintiff as a result of the breach, and damages. (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978)

10

22 Cal.3d 508, 514.)  However, the court found that "[i]n the context of a lender-borrower relationship, a lender is only liable for negligence where it 'actively participates' by exceeding its scope 'beyond the domain of the usual money lender.' [Citation.]  The allegations against the moving defendant lack sufficient facts and are pled in a conclusory manner.  Plaintiff's allegations of possible successor liability in his opposition are not pled in the [second amended complaint].  Further, such a theory is not sufficiently supported in the opposition to establish a viable amendment that would allege successor liability as to the moving defendant."

Faced with a lack of specific allegations of negligence against Chase, Dumas again argues that *Jolley* abrogated the general rule that a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its role as a lender of money.  Therefore, Dumas contends, he sufficiently alleged facts sufficient to establish a cause of action for negligence.

As discussed at pages 7 and 8, *ante*, *Jolley* considered egregious actions by a lender involved in a construction loan.  Subsequent courts have declined to expand *Jolley* or to diminish the general rule of no duty of care if the lender acts within the scope of its role as a lender of money.  (See *Lueras*, *supra*, 221 Cal.App.4th at p. 67.)

Here, Dumas's negligence allegations revolve around the misrepresentations of Acuna in connection with Dumas's loan.  Dumas contends he was rushed when signing the loan documents, was provided no time to review the documents, and could not understand the documents he signed.  According to Dumas, he signed them based on representations and the trust and confidence he placed in defendants.  Again, these are not the type of misleading, specific representations the court in *Jolley* found actionable.

11

**Violation of Business and Professions Code Section 17200 et seq.**

Dumas contends he has adequately presented a cause of action for violation of Business and Professions Code section 17200 et seq.[3] The trial court disagreed, finding Dumas's amended complaint failed to sufficiently allege any unfair business practices to support the cause of action.

To allege a claim of unlawful business practices under section 17200 et seq., a plaintiff must allege facts that show the practice violated a specific underlying law. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) In addition, the plaintiff must also allege a financial or property loss as a result of the defendant's unlawful acts. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 521-522 (*Jenkins*).)

In support of his claim, Dumas incorporated all the allegations set forth elsewhere in his amended complaint. However, we have found none of the causes of action cited sufficient to survive demurrer. Where a section 17200 claim is based on facts supporting other causes of action that have been found wanting, it is appropriate to also dismiss the underlying section 17200 claim. (*Keen v. American Home Mortgage Servicing, Inc.* (E.D.Cal. 2009) 664 F.Supp.2d 1086, 1102.) Accordingly, the trial court properly dismissed the cause of action for violation of section 17200 et seq.

**Wrongful Foreclosure**

In alleging wrongful foreclosure, Dumas argued that since the substitution of trustee was recorded after the notice of default, NDEx was not authorized to conduct a sale, and therefore the foreclosure process was flawed and void. Dumas also contended

---

[3] All further statutory references are to the Business and Professions Code unless otherwise designated.

MERS had no right to issue an assignment of the note and deed of trust, and wrongfully assigned them to Chase.[4]

The trial court properly noted the absence of any requirement that an instrument must be recorded to establish an agency relationship, and in any event, Dumas cannot show he was prejudiced by any imperfection in the foreclosure process. In *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, the homeowners alleged a defect in the assignment of the deed of trust. The homeowners did not claim misconduct in foreclosing on the property and admitted they were in default. The court rejected the challenge, reasoning: "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Id.* at p. 1507.)

The court in *Jenkins*, *supra*, 216 Cal.App.4th 497 reached a similar result, rejecting a homeowner's challenge to a foreclosure based on an improper transfer of the promissory note. The court found the homeowner's obligations under the note remained the same, even if subsequent assignments were invalid. The court reasoned: "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Id.* at p. 511.) In *Gomes*, *supra*, 192 Cal.App.4th at page 1155, the court found Civil Code section 2924 does not provide for a judicial action to determine whether the person initiating the foreclosure process is authorized.

---

[4] The court dismissed Dumas's cause of action for violation of Civil Code section 2923.5 after sustaining Chase and MERS's demurrer without leave to amend. Dumas does not address this cause of action on appeal.

Here, Dumas acknowledged he ceased to make payments on the loan. He does not allege that the assignment he challenges interfered with his ability to repay the loan. Although Dumas presents a list of alleged damages, these damages are not connected to the alleged irregularities in the processing of the loan. Dumas's wrongful foreclosure cause of action based upon alleged defects in the transfer of the note lacks merit and was properly dismissed without leave to amend.

## DISPOSITION

The judgment is affirmed.


           RAYE          , P. J.


We concur:


      MAURO      , J.


      DUARTE     , J.