Filed 6/3/22  Las Posas Valley Water Rights Coalition v. Mahan Ranch CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| LAS POSAS VALLEY WATER RIGHTS COALITION, | 2d Civil No. B317177 (Super. Ct. No. VENCI00509700) (Santa Barbara County) |
| Plaintiff, | |
| v. | |
| MAHAN RANCH, LLC, et al., | |
| Defendants and Appellants; | |
| ZONE MUTUAL WATER COMPANY et al., | |
| Defendants and Respondents. | |


Mahan Ranch, LLC, and associated persons and entities[1] (collectively, Mahan Ranch) appeal from the trial court's

---

[1] Shannon Alexander; Kirschbaum, LLC; Courtney Maguire; Mahan Development Corporation; Ralph D. Mahan, Trustee of the Ralph D. Mahan Separate Property Trust dated

order disqualifying Ferguson Case Orr Paterson LLP (FCOP) as their attorney of record in the ongoing litigation concerning the Las Posas Valley groundwater basin (the Basin Litigation). Mahan Ranch contends: (1) FCOP had no conflict of interest based on its previous work for Berylwood Heights Mutual Water Company and Zone Mutual Water Company (collectively, Respondents), but even if it did the disqualification motion should have been denied either (2) as untimely, or (3) because Respondents waived the conflict. We agree with Mahan Ranch's second contention, and vacate the disqualification order.

FACTUAL AND PROCEDURAL HISTORY

*The Las Posas Valley groundwater basin and its stakeholders*

In 1983, the Legislature created the Fox Canyon Groundwater Management Agency to manage the Las Posas Valley groundwater basin in central Ventura County. Twenty-six years later, interested stakeholders formed the Las Posas Users Group (LPUG) to work with Fox Canyon to allocate the basin's groundwater. Entities owned by the Ralph D. Mahan family retained FCOP partner Neal Maguire—who is married to

June 12, 2003; Ralph D. Mahan and Georgia A. Mahan, Trustees of the Mahan Family Trust dated June 12, 2003; John McGonigle; Nuveen; Oro Del Norte, LLC; John C. Orr; Sharon L. Orr; Frances Orr Parr; John D. Poe; RBV 2+5 LLC; RBV-Vanoni, LLC; Suzanne Saw; Leon Scott Stevens, Trustee of the Leon O. Stevens Trust dated November 19, 1997; TIAA; Craig H. Underwood; Underwood & Son, LLC; Urban-D Ranch Limited Partnership; US Horticulture Farmland, LLC; Charles L. Vanoni; David Vanoni; Lucy Vanoni; Mary Vanoni; VMB Water System; Melissa Wallace; Theodora Warner; Westchester Group Investment Management; Debra A. Whitson, Thomas E. Olson, and Thomas K. Strain, Trustees of the McGonigle Ranch Trust dated April 1, 2021.

2

Mahan's daughter—to represent them in allocation discussions. John C. Orr, another FCOP partner, also participated.

Dissatisfied with Fox Canyon's proposed allocation, in 2018 a coalition of LPUG members sued to establish their rights to Las Posas Valley groundwater. Among those sued by the coalition were Respondents. These companies, along with the Del Norte Water Company, jointly retained attorney Craig Parton to represent them in the Basin Litigation. Shareholders of three other mutual water companies sued by the coalition— Jane Donlon Waters, owner of Donlon Ranch; Urban-D Ranch Limited Partnership; and Oro Del Norte, LLC—retained FCOP to represent them. Entities owned by the Mahan family also retained FCOP. Kirschbaum, LLC, later retained FCOP to represent it.

Several of the parties sued by the coalition have longstanding relationships with each other: Waters is a member of Berylwood's board of directors and its former president. Maguire is a former Berylwood board member, and his in-laws, the Mahans, are longtime shareholders. Craig Underwood, the manager of Urban-D Ranch, is a former president of Zone. Orr, the manager of Oro Del Norte and an FCOP partner, is a former president of Del Norte. Jack Poe, the manager of Kirschbaum, is a member of the Del Norte board of directors.

The parties' relationships to each other generally, and to FCOP specifically, have been well known since the Basin Litigation commenced in 2018. Maguire previously represented the Mahan family on the Berylwood board of directors. At least three members of Zone's board of directors know Orr and have attended events he hosted. Parton has known Orr and of his ties to Del Norte and Oro Del Norte for more than a decade. Parton

3

also knew that Maguire was related to the Mahans and that FCOP represented them.

Parties involved in the Basin Litigation have shifted over time. Relevant here, in February 2021 US Horticulture acquired Donlon Ranch. Respondents both stipulated that the litigation could "proceed with US Horticulture as a successor in interest to Donlon Ranch" and that "US Horticulture [could] continue to be represented by [FCOP]."

*FCOP's work for Respondents*

Prior to the Basin Litigation, FCOP performed limited legal work for Zone. In the 1990s, FCOP helped Zone negotiate two well agreements with basin landowners. In 2015, FCOP advised Zone about a corporate governance issue. Despite this work, Underwood, in his capacity as Zone president, said that an attorney from a firm other than FCOP was Zone's general counsel.

FCOP continued to perform discrete legal work for Zone after the Basin Litigation commenced. In May 2020, while Parton was Zone's attorney in the litigation and Underwood was its president, Zone discovered that it did not have properly recorded easements for some of its roads and pipelines. Because Parton did not do that type of work, Zone asked FCOP to draft the necessary documents. FCOP agreed to do so if Zone would consent to FCOP's continued representation of its clients in the Basin Litigation. Zone consented, and signed a conflict waiver on June 30, 2021.

FCOP performed no legal work for Berylwood prior to the Basin Litigation. After litigation commenced, however, Berylwood asked FCOP to negotiate a well easement with one of its shareholders. Before doing so, FCOP prepared a conflict

4

waiver.  Berylwood executed the waiver on October 12, 2020, acknowledging the possibility of a conflict of interest between it and FCOP's clients in the Basin Litigation and consenting to FCOP's continued representation of its clients if such a conflict arose.  FCOP subsequently advised Berylwood on the transfer of Berylwood stock between shareholders.

*The Basin Litigation*

In 2019, the parties stipulated that the Basin Litigation would proceed in three phases.  In Phase 1, which concluded in September 2020, the trial court established the total "safe yield" of the basin and the percentage of that yield that certain public agencies may extract.  In the current phase, Phase 2, the court will determine how the remainder of the basin's yield will be allocated among landowners and mutual water companies.  The Phase 2 trial was initially set for June 2021, but was later continued to January 2022.

During Phase 1, FCOP worked closely with Parton, who repeatedly confirmed on behalf of his clients that each mutual water company collectively owned the water rights associated with their pumping.  In February 2021—five months into Phase 2 of the Basin Litigation—Respondents again confirmed that each company asserted a "correlative, overlying right to extract groundwater from the [b]asin."

Some of Respondents' shareholders subsequently agitated to change their companies' positions regarding the ownership of water rights.  Shareholders that exclusively received water from the companies (rather than also from their own wells) believed that "each mutual water company acted as their agent to deliver their water to them based on their own water rights."  These "exclusive shareholders" claimed that water

5

rights should not be allocated according to stock ownership but instead according to the historical delivery of water.

After determining that they comprised a majority of the shareholders of both companies, Respondents' exclusive shareholders installed new boards of directors. The new board members determined that delivering water to shareholders proportional to stock ownership benefited those that "either did not historically take much water" or those that "owned shares that were disproportionate to the water they had historically received." Based on that determination, the boards moved to prevent Respondents from asserting that each company, rather than the individual shareholders, owned the rights to basin groundwater. US Horticulture, which had stepped into the shoes of Donlon Ranch, told the new Berylwood directors that these positions were not in the best interests of the company and urged them to reconsider.

Respondents declined to reconsider their new positions. Parton determined that the positions were now adverse to that held by Del Norte, requiring the companies to end their joint representation agreement. All three companies retained separate counsel in July 2021.

*The disqualification motion*

On November 24, 2021—less than six weeks before the Phase 2 trial was slated to begin—Respondents filed a joint motion to disqualify FCOP from participating in the Basin Litigation. They argued that FCOP failed to obtain their informed written consent: (1) to Maguire's and Orr's financial interests in the litigation; (2) to FCOP's work as general counsel for Del Norte; (3) to FCOP's clients' claim that their water rights are superior to Respondents'; (4) that well easements (such as

6

that FCOP prepared for Berylwood) might include language that could be "relevant to a determination of water rights" in the Basin Litigation; (5) that the well agreements FCOP prepared for Zone in the 1990s could similarly "include language that may be relevant to a determination of water rights" in the litigation; and (6) that FCOP's clients would take the position that mutual water companies own water rights and do not act as agents of their shareholders. Respondents asked the trial court to set the hearing on their motion for the week before the Phase 2 trial commenced.

Mahan Ranch opposed the disqualification motion, arguing that: (1) FCOP obtained Respondents' informed written consent to any potential conflict; (2) Respondents knew of the positions FCOP was asserting on behalf of its clients; (3) FCOP had no duty to disclose its relationships with the Mahan family, Del Norte, or Oro Del Norte; (4) FCOP owed Respondents no duty of loyalty because neither company was a current FCOP client; (5) FCOP obtained no confidential information from Respondents that was relevant to the Basin Litigation; and (6) Respondents waived any conflict due to their delay in bringing the disqualification motion and the prejudice that would ensue from disqualifying counsel on the eve of trial (citing *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 844-845 (*Liberty National*)).

In its tentative ruling, the trial court expressed frustration that Respondents filed their disqualification motion at the eleventh hour. Respondents had "known for years" that Maguire and Orr had "personal interests" in the Basin Litigation, but nonetheless delayed in filing their motion. That delay would require Mahan Ranch to "find new counsel just weeks before

trial"—a difficult proposition "considering [that] most water lawyers [were] already involved in the litigation." But Respondents were not solely to blame for the motion's untimeliness: Mahan Ranch also failed to "secure judicial recognition of [FCOP's] qualification[s]." "Both sides [were thus] equally responsible for what [had] occurred."

After a hearing, the trial court concluded that it had "no valid option" but to grant the disqualification motion. FCOP "concurrently represented" both Respondents and Mahan Ranch in the Basin Litigation. FCOP's representation of Mahan Ranch required it to "engage[] in conduct . . . directly adverse to" Respondents' interests. The waivers Respondents signed did not cure this conflict, as they were "obtained . . . late, did not properly disclose all conflicts, and did not include all adverse parties." And though the motion was untimely, *Liberty National* did not "continue to be the law of California." FCOP's disqualification was therefore required.

## DISCUSSION

### *General legal principles*

"'Trial courts . . . have the power to order disqualification of counsel when necessary for the furtherance of justice.'" (*Mills Land & Water Co. v. Golden West Refining Co.* (1986) 186 Cal.App.3d 116, 126, superseded by rule on another point as stated in *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 789.) The "'[e]xercise of that power requires a cautious balancing of competing interests,'" weighing "'a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel[,] and any tactical abuse underlying a disqualification proceeding'"

8

on the one hand "'against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel'" on the other. (*Mills Land*, at p. 126, italics omitted.) "'Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.'" (*Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 616 (*Antelope Valley*).) Courts must thus "'examine these motions carefully to ensure that literalism does not deny the parties substantial justice.' [Citation.]" (*Ibid.*)

We review the order disqualifying FCOP as Mahan Ranch's attorney of record for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.) Any express or implied factual findings underlying the order are reviewed for substantial evidence, while the trial court's conclusions of law are reviewed de novo. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) An order "that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) The "application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi*, at p. 712.)

*The disqualification motion was untimely*

Mahan Ranch contends the trial court erred when it granted Respondents' disqualification motion because the motion was untimely. We agree.

For more than 30 years, California courts have adhered to the view that a party may impliedly waive attorney disqualification if they do not bring their disqualification motion in a timely manner. (*Liberty National, supra*, 194 Cal.App.4th at

9

pp. 844-845; see, e.g., *Western Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 763.) Such untimeliness may indicate that the attorney's conflict was """not seen as serious or substantial by the moving party," and can suggest "the possibility that the 'party [instead] brought the motion as a tactical device."""" (*Antelope Valley*, *supra*, 30 Cal.App.5th at p. 625.) Untimeliness alone is not a sufficient basis to deny a disqualification motion, however. (*Ibid*.) To result in a waiver, both the moving party's delay and the ensuing prejudice to the nonmoving party must be extreme or unreasonable.[2] (*Ibid*.) If the nonmoving party """makes a prima facie showing of extreme delay and prejudice, the burden then shifts to the moving party to justify the delay."""" (*Ibid*.)

Respondents' disqualification motion should have been denied as untimely. As a threshold matter, the trial court erred in believing that *Liberty National*, *supra*, 194 Cal.App.4th 839 is no longer good law and refusing to apply its principles. An order "that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 159.)

Moreover, Mahan Ranch made the requisite prima facie showing of "extreme" delay when it noted, in its opposition to the disqualification motion, that Respondents waited until just six weeks before trial in Phase 2 of the Basin Litigation was slated to begin—and more than two years after FCOP first appeared in the litigation—to move to disqualify the firm. (Cf. *Antelope Valley*, *supra*, 30 Cal.App.5th at p. 625 ["'Factors

---

[2] The same standards apply to disqualification motions based on conflicts due to either successive or concurrent representation. (*Antelope Valley*, *supra*, 30 Cal.App.5th at pp. 625-628.)

relevant to the reasonableness of a delay include the "stage of litigation at which the disqualification motion is made" and the complexity of the case'"].)  The burden then shifted to Respondents to justify that delay, requiring them to "address:  (1) how long [they had] known of the potential conflict; (2) whether [they had] been represented by counsel since [they knew] of the potential conflict; (3) whether anyone prevented [them] from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why." (*River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1309.)  The trial court failed to require Respondents to show how these factors justified their delay, however, and instead blamed "both sides" for the disqualification motion's untimeliness.  That was an abuse of discretion.  (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 159.)

It was significant, too, as none of the *River West* factors justify the disqualification motion's untimeliness.  As to the first factor, when the Basin Litigation was filed in 2018, Waters was president of Berylwood and Underwood was president of Zone.  Both Waters and Underwood were FCOP clients, and both knew that Orr managed Oro Del Norte and that Maguire's wife was a member of the Mahan family.  Other members of Respondents' boards of directors also knew of these relationships.  Consequently, Respondents knew of FCOP's ties to entities involved in the Basin Litigation and the conflicts those ties might pose.  (Civ. Code, § 2332 [principal and agent are deemed to know what the other knows or ought to know]; *Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819, 828 [attorney knowledge imputed to client].)

11

As to the second *River West* factor, Respondents were represented by counsel—Parton—when the potential conflicts arose: in 2018 for Zone since FCOP had worked for it since 1986, and in 2020 for Berylwood since that was when FCOP negotiated a well easement for it. And as to the third and fourth factors, Respondents have made no showing that anything prevented them from filing their disqualification motion earlier or that doing so would have been futile. Their decision to wait until late November 2021 to file their motion was thus not justified. The delay was unreasonable. (*Liberty National*, *supra*, 194 Cal.App.4th at pp. 846-847.)

It was also prejudicial. By granting the disqualification motion on the eve of the Phase 2 trial, the trial court deprived Mahan Ranch of counsel of its choice, and denied FCOP its interest in representing its clients. Disqualification would be financially burdensome to Mahan Ranch, which had paid for nearly three years of legal work when the court disqualified FCOP. Upholding the disqualification order would only increase that burden, requiring Mahan Ranch to hire new attorneys who would have to undertake significant work to prepare for trial in litigation that involves more than 100 parties.

The specialized nature of water law increases this prejudice. As the trial court recognized, requiring Mahan Ranch to find new counsel just weeks before trial would be difficult (at best) since most of the Central Coast's water lawyers are already involved in the Basin Litigation. Such difficulties suggest that Respondents brought their motion on the eve of the Phase 2 trial as a tactical maneuver. Mahan Ranch has thus shown that the disqualification motion was untimely and that that untimeliness

12

was "extremely prejudicial." The trial court therefore abused its discretion in granting it.[3]

DISPOSITION

The trial court's order granting Berylwood Heights Mutual Water Company and Zone Mutual Water Company's joint motion to disqualify Ferguson Case Orr Paterson LLP as the attorney of record for Mahan Ranch, LLC, and associated persons and entities in the litigation concerning the Las Posas Valley groundwater basin, entered December 21, 2021, is vacated. The court is directed to enter a new and different order denying the disqualification motion. The Mahan Ranch parties shall recover their costs on appeal.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

---

[3] Given our conclusion, we need not consider Mahan Ranch's contentions that FCOP had no conflict of interest or that Respondents waived their objections to any conflict.

13

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Ferguson Case Orr Paterson, Wendy C. Lascher, Neal P. Maguire, Michael A. Velthoen, James Q. McDermott and Jessica M. Wan for Defendants and Appellants.

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine E. Bennett, Joseph D. Hughes, R. Jeffrey Warren; Olivarez Madruga Lemieux O'Neill, Keith Lemieux and Alex Lemieux; Aleshire & Wynder and Keith Lemieux for Defendants and Respondents.