[No. B053201. Second Dist., Div. Seven. June 14, 1991.]

CYNTHIA ARAGON-HAAS, Plaintiff and Appellant, v.
FAMILY SECURITY INSURANCE SERVICES, INC., Defendant and
Respondent.

## COUNSEL

Nagler & Schneider, Lawrence H. Nagler and Harry Rebhuhn for Plaintiff and Appellant.

Hagenbaugh & Murphy, Alan R. Zuckerman and Stephen Barry for Defendant and Respondent.

## OPINION

**LILLIE, P. J.**—Cynthia Aragon-Haas sued her former employer, Family Security Insurance Services, Inc., for damages for wrongful discharge. Plaintiff appeals from judgment of dismissal entered after the trial court sustained defendant's demurrer to four causes of action of the first amended complaint without leave to amend and plaintiff voluntarily dismissed the remaining causes of action.

### FACTS

The first amended complaint contained six causes of action, four of which (the first, second, fifth and sixth causes of action) are relevant for purposes of this appeal.[1]

---

[1] The third and fourth causes of action sought damages for conversion of certain items of personal property belonging to plaintiff which she kept in her office on defendant's premises. Defendant demurred to the remaining causes of action. After the demurrer was sustained without leave to amend plaintiff voluntarily dismissed the third and fourth causes of action without prejudice. The judgment of dismissal recites the foregoing procedural steps and dismisses plaintiff's action in its entirety.

The first cause of action (breach of written contract) alleged: On July 29, 1986, plaintiff was employed by defendant pursuant to a written contract of employment dated October 1, 1986. The contract, a copy of which was attached to the pleading, included the following provision: "TERM OF EMPLOYMENT [¶] Section 1.01. The Employer hereby employs the Employee and the Employee hereby accepts such employment upon the terms and conditions hereinafter set forth beginning July 29, 1986, and expiring one (1) year from said date, unless sooner terminated as provided in Section 7.01 [sic; should be Section 8.01] of this Agreement. Thereafter this Agreement shall be automatically extended for six (6) consecutive one (1) year terms." When plaintiff signed the agreement she was told that she was on one year's probation and she understood the foregoing provision to mean that during the first year she could be terminated with or without cause but after the first year she could not be terminated except for good cause. Plaintiff's employment was not terminated within the one-year period beginning July 29, 1986. Plaintiff worked continuously and exclusively for defendant as general manager, vice-president and general manager, and finally as executive vice-president. In annual reviews of plaintiff's job performance she was praised and encouraged; plaintiff never received any significant criticism of her performance. On September 1, 1988, defendant sold plaintiff 3 percent of defendant's shares pursuant to a "Stock Purchase and Sale Agreement," a copy of which was attached to the pleading. On March 2, 1989, plaintiff was appointed executive vice-president of defendant and on August 1, 1989, she received commendations on her performance, a 10 percent increase in salary, and an additional 5 percent commission override. On September 22, 1989, without warning, explanation or just cause, defendant handed plaintiff a letter dated September 21 notifying her that her employment was terminated effective September 22, 1989. Defendant thereby breached its employment agreement with plaintiff. By reason of said breach plaintiff sustained damages of $210,800, the compensation due her for the remaining term of her employment as fixed by the agreement.

The second cause of action (breach of covenant of good faith and fair dealing) alleged: The parties' employment agreement included an implied covenant of good faith and fair dealing which required that each party act with fairness toward the other and that neither take any action to prevent the other from realizing the benefits of their relationship. Defendant breached the covenant by terminating plaintiff's employment without just cause and refusing to pay plaintiff the compensation due her for the remaining term of employment. By reason of said breach plaintiff sustained damages of $210,800.

The fifth cause of action (estoppel to terminate employment contract except for good cause) alleged: Because of defendant's conduct, the ambi-

guity of the employment agreement, and the fact that plaintiff was induced to purchase shares of defendant in reliance on defendant's express representation that such sale was " 'to induce Buyer [plaintiff] to continue to render such services to Seller [defendant] in the future,' " defendant is estopped to terminate its employment agreement with plaintiff except for good cause.

The sixth cause of action (untitled, but obviously fraud) alleged: On October 1, 1986, defendant induced plaintiff to enter into the employment agreement on the representation that after the first year of employment, which would be a probationary period, defendant would not terminate plaintiff's employment except for good cause. On September 1, 1988, defendant induced plaintiff to enter into the stock purchase and sale agreement by representing to her that thereafter defendant would terminate her employment only for good cause. Said representations were false and were known by defendant to be false, but plaintiff was ignorant of their falsity and believed them to be true. In reliance on the representations plaintiff entered into the employment agreement and the stock purchase and sale agreement and thereby lost other valuable business opportunities. As a result of defendant's fraud plaintiff sustained damages of $210,800.

Defendant demurred generally to the first, second, fifth and sixth causes of action. In support of the demurrer to the first cause of action defendant noted that the employment agreement included the following provision: "TERMINATION OF EMPLOYMENT [¶] Section 8.01. This Agreement may be terminated by the Employer with or without cause upon the giving of written notice of termination to the Employee. Employee may terminate this Agreement with or without cause upon thirty (30) days written notice to the Employer." Defendant argued that such provision established that plaintiff was an at-will employee and therefore defendant did not breach the employment agreement by terminating plaintiff's employment without just cause. Defendant also argued that the contract was intended by the parties as a final expression of their agreement[2] and therefore could not be contradicted by parol evidence as plaintiff attempted to do by alleging that she was told when she signed the contract that during the first year of her employment she was on probation and could be terminated with or without cause, but thereafter only for cause. The demurrer to the second, fifth, and sixth causes

---

[2]The employment agreement included the following provisions: "*Containment of Entire Agreement Herein* [¶] Section 9.02. This Agreement contains all of the terms, conditions and promises of the parties hereto. Employee represents that she is not relying upon any representation or promise not contained in this Agreement, and Employee expressly agrees that Employee has not executed this Agreement in reliance upon any such representation or promise. [¶] Section 9.03. This agreement modifies and supersedes any and all previous agreements if any existing between the parties hereto."

of action rested upon the same ground, i.e.: Inasmuch as the employment agreement gave defendant the right to terminate plaintiff's employment without cause, such termination did not constitute a breach of the covenant of good faith and fair dealing implied in the agreement because such a covenant cannot be used to imply an obligation which would obliterate a right expressly provided by a written contract; further, because of the terms of the employment agreement there was no basis for either estoppel or fraud inasmuch as plaintiff could not reasonably have relied on defendant's alleged promise, or conduct implying, that plaintiff would be discharged only for cause.

The trial court sustained the demurrer to the first, second, fifth and sixth causes of action without leave to amend.[3] Judgment was entered dismissing the action in its entirety. (See fn. 1, *ante.*) Plaintiff appeals from the judgment insofar as it dismisses the first, second, fifth and sixth causes of action.

## DISCUSSION

## I

### STANDARD OF REVIEW

The function of a demurrer is to test the sufficiency of the complaint by raising questions of law. (*Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 534 [252 Cal.Rptr. 565].) The complaint must be given a reasonable interpretation and read as a whole with its parts considered in their context. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) A general demurrer admits the truth of all material factual allegations of the complaint; plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court. (*Nagy* v. *Nagy* (1989) 210 Cal.App.3d 1262, 1267 [258

[3]The trial court's reasons for sustaining the demurrer appear in a minute order which reads in pertinent part as follows: "a. Plaintiff's interpretation of the employment agreement does not satisfactorily reconcile sections 1.01 and 8.01. [¶] i. Her interpretation requires the invention of an otherwise unexpressed concept—the 'probationary period,' during which the employee's status is essentially at-will, followed by another period during which somehow the at-will nature of the employee's earlier status changes. [¶] ii. Her interpretation, moreover, would render section 8.01 nugatory after the first year of employment, although the text of the agreement itself does not reflect an intention to make it inoperative after the first year. [¶] b. The proper and reasonable interpretation of the agreement is that the power to terminate the employment relationship as provided for in section 8.01 exists throughout the term of the agreement. This interpretation gives section 8.01 an effect consistent with its plain meaning. The function of section 1.01 is to bring into operation all of the agreement's terms to define and govern the relationship between the employer and employee."

Cal.Rptr. 787].) "As a reviewing court we are not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court." (*Miller* v. *Bakersfield-News Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 901 [119 Cal.Rptr. 92].)

## II

### BREACH OF WRITTEN CONTRACT

"[W]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement. So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." (*Marina Tenants Assn.* v. *Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 128 [226 Cal.Rptr. 321].) Whether a contract is ambiguous is a question of law. (*Hillman* v. *Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 866 [257 Cal.Rptr. 535].) Section 1.01 of the parties' employment agreement gives defendant the right to terminate plaintiff's employment during the first year "as provided in Section [8.01]," i.e., with or without cause, and "*[t]hereafter* this Agreement shall be automatically extended" for six consecutive one-year terms. (Italics added.) The word "thereafter" makes it unclear whether the right to terminate existed only during the first year of plaintiff's employment or whether that right continued throughout the term of employment specified in the contract. Section 1.01 thus is ambiguous and it is reasonably susceptible of the meaning alleged by plaintiff, viz., after successful completion of the first year of her employment she could be discharged only for good cause.

Where a complaint is based on a written contract which it sets out in full, a general demurrer to the complaint admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible. (*Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841].) While plaintiff's interpretation of the contract ultimately may prove invalid, it was improper to resolve the issue against her solely on her own pleading. "In ruling on a demurrer, the likelihood that the pleader will be able to prove his allegations is not the question." (*Shaw* v. *Metro-Goldwyn-Mayer, Inc.* (1974) 37 Cal.App.3d 587, 599 [113 Cal.Rptr. 617].)

Defendant argues that the demurrer to the first cause of action was properly sustained because the employment agreement was integrated (see

fn. 2, *ante*) and evidence sustaining plaintiff's interpretation of the agreement therefore is inadmissible inasmuch as it would vary the terms of the agreement. The contention is without merit.

Where parties to a written contract have agreed to it as an "integration," i.e., a complete and final embodiment of the terms of an agreement, parol evidence cannot be used to add to or vary its terms. (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561]; Code Civ. Proc., § 1856, subd. (a).) Extrinsic evidence is admissible, however to explain what the parties meant by the language they used. As stated by the California Supreme Court: "Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms. . . . [¶] Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties." (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], fn. omitted.)

## III

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

██ Inherent in every contract is a covenant of good faith and fair dealing which implies a promise that each party will refrain from doing anything to injure the right of the other to receive the benefits of the agreement. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) The allegations of the first amended complaint state a cause of action for breach of the covenant of good faith and fair dealing. However, inasmuch as *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], abolished tort remedies for breach of the covenant in wrongful termination of employment cases (*id.*, at p. 700),[4] the second cause of action adds nothing because the same conduct on defendant's part is alleged to constitute breach of both the employment contract and the covenant. For breach of either plaintiff may recover only contract damages.

---

[4]*Foley* is fully retroactive and applies to all cases which were not final as of January 30, 1989. (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 993 [258 Cal.Rptr. 592, 772 P.2d 1059].)

## IV

### ESTOPPEL TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE

■ The fifth cause of action alleged that defendant was estopped to terminate plaintiff's employment without good cause because plaintiff purchased shares of defendant's stock in reliance on its express representation (contained in the stock purchase and sale agreement) that the sale was made to induce plaintiff to continue rendering services to defendant.

"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) Such an estoppel requires reliance and detriment. (*Chrisman* v. *Superior Court* (1987) 191 Cal.App.3d 1465, 1470 [236 Cal.Rptr. 703].) Plaintiff alleged reliance and resulting detriment in that she was induced by defendant's representation to forgo other business opportunities. Plaintiff's alleged reliance is unreasonable as a matter of law in view of the following provision of the stock purchase and sale agreement: "Nothing contained in this Agreement shall in any way affect the status of the employer-employee or independent contractor relationship that currently exists between . . . Seller . . . on the one hand, and Buyer, on the other hand. In no way shall this Agreement be construed to grant to Buyer, in his capacity as an employee, any rights in addition to those that Buyer might have in such capacity, but for this Agreement." This provision recognizes that the duration of plaintiff's employment and defendant's right to discharge her were governed solely by the parties' employment agreement. It follows that no cause of action for estoppel is stated based on plaintiff's understanding that defendant, by selling plaintiff the stock, assured her of continued employment.

## V

### FRAUD

In her appellant's brief plaintiff does not challenge the sustaining of the demurrer to the sixth cause of action. Accordingly, we deem as waived or abandoned any claim of error regarding that issue. (See *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 381 [177 Cal.Rptr. 380]; *County of Sacramento* v. *Superior Court* (1971) 20 Cal.App.3d 469, 473 [97 Cal.Rptr. 771].)

## DISPOSITION

The judgment of dismissal is reversed as to the first and second causes of action; in all other respects the judgment is affirmed. Neither party shall recover costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.