Filed 2/25/22; Certified for Publication 3/21/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KENNETH J. SCHMIER,<br><br>    Plaintiff and Appellant,<br>v.<br>CITY OF BERKELEY,<br><br>    Defendant and Respondent. | A161556<br><br>(Alameda County<br>Super. Ct. No.<br>RG19036596) |

This is an appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend on the ground the case is barred by the 90-day statute of limitations set forth in Government Code section 66499.37.[1] We reverse.

## BACKGROUND

In 1996, appellant Kenneth J. Schmier converted two apartment units in Berkeley into condominiums.[2] At that time, Berkeley Municipal Code section 21.28.060(A) required that an owner converting an apartment to a condominium execute and record a lien on the property obliging the owner to pay an " 'Affordable Housing Fee' " based on a formula set forth in the code.

---

[1] All further undesignated statutory references are to the Government Code.

[2] This was a joint project with his brother, Eric Schmier.  However, Eric Schmier is now deceased, and Schmier is the sole plaintiff as "the owner in fee simple of two real properties which are condominium units . . . in the City of Berkeley."

1

Accordingly, Schmier executed two lien agreements as a condition of approval of the conversion.

The agreements provided in part, "[e]ach of the duties of the undersigned is created in consideration of the City's approval of an Application for Conversion of TIC to Condominiums for the undersigned prior to the payment of the full Affordable Housing Fee required by law. . . ." (Boldface omitted.)  It further specified,

> "[t]he undersigned represent and agree that they intend to convert this unit and that the applicable Affordable Housing Fee is 30 percent of the difference between the sale price of the unit when it is sold as a condominium and eight (8) times the annual rental value at the time of the application for conversion.  The annual rental value, $6040.56, is 12 times the permanent rent ceiling of $503.38.  Eight times the annual rental value (8X503.38X12) is equal to $48,324.48.  Thus, the Affordable Housing Fee would be calculated at the time of sale as 30 percent of the difference between the sales price and $48,324.48. . . .  [S]aid sum will be paid . . .  at the time of sale of this converted unit."  (Boldface omitted.)

The lien agreements also provided, "Execution of this document shall not prejudice the right of the undersigned to challenge the validity of the Affordable Housing Fee.  In the event that the Affordable Housing Fee is determined to be invalid by a court of competent jurisdiction, or is rescinded by the City of Berkeley, this lien shall be void and have no effect."

In his first amended complaint, Schmier alleged that more than 10 years later, in 2008, Berkeley "formally rescinded [Berkeley Municipal Code section] 21.28.060(A) under which the Liens were demanded by [Berkeley] and recorded, and instead enacted [Berkeley Municipal Code section]

2

21.28.070. . . ." The new code section sets forth a different formula for calculation of the affordable housing fee, under which the fee owed by Schmier is significantly less.

Another 10 years later, in February 2019, counsel for Schmier "advised [Berkeley] in writing of [Schmier's] intention to sell . . . and that escrow had opened on the sale at a gross selling price of $539,000." Berkeley responded with a request that Schmier pay an affordable housing fee of $147,202.66, calculated under the long since rescinded section of the municipal code. Had the city applied the current code section, the fee would have been less than half of what was requested.

Schmier "formally protested" the requested fee on multiple grounds, including that Berkeley Municipal Code section 21.28.060(A) had been rescinded, rendering the liens void by their own terms. Berkeley rejected Schmier's protest on July 29, 2019 and demanded payment of $147,202.66 upon the close of escrow. Schmier filed the instant action on September 25, 2019.

Berkeley interposed a demurrer to Schmier's first amended complaint[3] on the ground the action is barred by the 90-day statute of limitations set forth in the Subdivision Map Act (Gov. Code, § 66410 et seq.) section 66499.37, which, according to the Berkeley, commenced running more than 20 years earlier when Schmier signed the lien agreements. Berkeley further asserted "the facts alleged in the [first amended complaint] show that the Affordable Housing Fee imposed on each of [Schmier's] units as a condition of their conversion to condominiums was not rescinded by City of Berkeley Ordinance No. 7,025."

---

[3] The court had sustained Berkeley's demurrer to Schmier's initial complaint with leave to amend.

3

The trial court sustained the demurrer without leave to amend, ruling Schmier "entered into an agreement involving the city Ordinance that existed at the time the agreement [was] memorialized in a recorded lien. Whether or not the ordinance was later rescinded or amended is immaterial. The City may still enforce the agreed upon recorded lien on the property."[4]

## DISCUSSION

Schmier contends the Subdivision Map Act's statute of limitations is inapplicable, and even if it were applicable, it did not begin running until the instant dispute arose over the meaning of the language of the lien agreements.

"[I]t is difficult for demurrers based on the statute of limitations to succeed because (1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded and (2) resolution of the statute of limitations issue can involve questions of fact. Furthermore, when the relevant facts are not clear such that the cause of action might be, but is not necessarily, time-barred, the demurrer will be overruled. [Citation.] Thus,

_____

[4] Our standard of review is well-established. " 'We review the trial court's sustaining of the general demurrer independently, and "[o]ur task in reviewing a judgment of dismissal following the sustaining of a demurrer is to determine whether the complaint states a cause of action." [Citation.] We treat the demurrer as admitting all the properly pleaded material facts and consider matters which may be judicially noticed, but we do not treat as admitted contentions, deductions, or conclusions of fact or law. [Citation.] Further, " 'we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " [Citation.] Because a demurrer tests only the legal sufficiency of the pleading, we accept as true even the most improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove its factual allegations. [Citation.] "Facts appearing in exhibits attached to the first amended complaint also are accepted as true and are given precedence, to the extent they contradict the allegations." ' " (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236, fn. 10.)

4

for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed." (*Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408, 420, fns. omitted (*Visalia*).)

Section 66499.37 provides in part, "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision. Thereafter all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations. . . ."

Schmier maintains he has never disputed "the reasonableness or legality of any condition" of approval of the condominium conversion. Rather, what is in dispute is the meaning of certain language in the lien agreements—that " '[i]n the event that the Affordable Housing Fee is . . . rescinded by the City of Berkeley, this lien shall be void and have no effect' "—that arose in light of circumstances that did not even exist at the time of the approval.

Berkeley asserts, in contrast, that Schmier "conced[ed] that the liens are a condition of approval of a subdivision that is subject to the Subdivision Map Act . . . [and] that this action challenges a condition of approval of a subdivision" and therefore "cannot avoid the conclusion that the action is untimely . . . [because it was] filed more than two decades too late." Berkeley

5

cites to paragraphs 8 and 9 of Schmier's first amended complaint in support its assertion.

Berkeley misreads the amended complaint. What Schmier actually alleged in those two paragraphs is "a '[c]ondominium conversion is the process of subdividing a multi-unit property into separately owned housing units with individual mortgages. . . .' [¶] Plaintiff alleges that '[s]uch [s]ubdivisions are regulated under the California Subdivision Map Act and Subdivided Lands Act.'" He further alleged that "[o]n February 27, 1996, pursuant to [Berkeley Municipal Code section] 21.28.060(A), Plaintiff executed and recorded . . . the liens demanded by [Berkeley] on the Properties, as a mandatory precondition of approval of Plaintiff's conversion application. . . ."

What these paragraphs allege are the historic facts—that Schmier applied for a conversion approval and executed the documents required for the approval. They do *not* allege that Schmier is contesting the imposition of any of the conditions of approval. Rather, as the remainder of Schmier's allegations make clear, this dispute, which could not possibly have existed at the time of the conversion approval, concerns the meaning of certain language in the lien agreements and the consequences of Berkeley's alleged rescission of the then-operative Berkeley Municipal Code provision and enactment of a new provision in its place.

Berkeley's reliance on *Aiuto v. City and County of San Francisco* (2011) 201 Cal.App.4th 1347 is misplaced. In *Aiuto*, the plaintiffs were owners of condominium units subject to restrictions imposed by San Francisco's Below Market Rate Condominium Conversion Program (BMR Program). (*Id.* at p. 1350.) The plaintiffs' complaint "challeng[ed] [the] adoption of the ordinance," specifically alleging a regulatory taking, state law preemption,

6

and a violation of their civil rights. (*Id*. at p. 1352.) They sought "to set aside the City's decision to adopt [the] ordinance." (*Id*. at p. 1359.) Because the plaintiffs challenged the adoption of the ordinance, itself, the court held "the 90-day litigation limitation period prescribed by section 66499.37 applies to plaintiffs' facial claims." (*Id*. at pp. 1359–1360.) Schmier made no such facial claim—he did not challenge the requirement that he execute a lien agreement, nor did he challenge the city's adoption of the former Affordable Housing Fee code section, or its alleged recission thereof and adoption of a new code section.

Thus, Schmier's complaint is not subject to the 90-day limitations period set forth in the Subdivision Map Act.[5]

But even if it were, Schmier correctly maintains it did not begin to run until the instant dispute over the meaning of the lien agreement language. *Honchariw v. County of Stanislaus* (2020) 51 Cal.App.5th 243 (*Honchariw*), to which Schmier cites, is illustrative.

In *Honchariw*, the plaintiff sought to divide a parcel of land into eight residential lots. (*Honchariw*, *supra*, 51 Cal.App.5th at p. 246.) The county ultimately approved the plaintiff's application, subject to 42 "conditions of approval." (*Id*. at p. 249.) Certain of these pertained to water supply and fire hydrants. (*Id*. at pp. 249–250.) The plaintiff interpreted the conditions to mean "a functional fire suppression system was not required for approval of a final map and, instead, could be built out as the lots were developed." (*Id*. at p. 253.) The county, however, interpreted the conditions to " 'require the Developer to install a fire suppression system based on functional fire

---

[5] Schmier also asserts section 66499.37 does not apply to this action because the voidness provision of the lien agreement is "self-executing." We need not and do not reach this claim.

hydrants'—something the draft developer agreement did not require." (*Id.* at p. 252.) The plaintiff filed an action for declaratory and writ relief, which the trial court denied, agreeing with the county's reading of the conditions. (*Id.* at p. 253.)

On appeal, the county maintained the 90-day statute of limitations in the Subdivision Map Act barred the suit because the plaintiff's complaint assertedly challenged the " 'reasonableness, legality, or validity of any condition.' " (*Honchariw, supra*, 51 Cal.App.5th at p. 255.) The appellate court ruled otherwise, explaining section 66499.37 "covers lawsuits challenging a variety of decisions by the local agency and lawsuits 'to determine the reasonableness, legality, or validity of any condition attached,' to a decision about a subdivision." (*Honchariw,* at p. 255.) However, the plaintiff's "main issue is not with the reasonableness, legality or validity of any of the conditions of approval adopted in May 2012. Instead, he contends the County has misinterpreted and misapplied the conditions of approval." (*Ibid.*) Accordingly, the statute of limitations period did not accrue until "the interpretation of the conditions of approval set forth in the June and July 2017 correspondence of the [County, which] is the act or determination being challenged in this lawsuit." (*Ibid.*, italics omitted.)

The analysis in *Honchariw* is equally apropos here—the limitations period did not accrue until the city disagreed with Schmier as to the meaning of the language in the lien agreements. Indeed, the city's assertion that the 90-day period commenced at the time the conversion project was approved defies logic given that the events giving rise to the instant dispute did not exist at that time but occurred more than 20 years later. Like the plaintiff in *Honchariw*, Schmier did not challenge the reasonableness, legality or validity of any of the conditions of approval of the condominium conversion. Rather,

he alleged Berkeley "misinterpreted and misapplied" the language of the lien agreements stating, "this lien shall be void and have no effect" if the affordable housing fee is "rescinded by the City of Berkeley."

Thus, even assuming the 90-day statute set forth in section 66499.37 applies, as in *Honchariw,* it could not have begun to run until Berkeley rejected Schmier's assertion that the lien agreement, by its own terms, was no longer operative when the city rescinded the then-applicable municipal code provision.[6]

In sum, "the untimeliness of the lawsuit [did not] clearly and affirmatively appear on the face of the complaint," (*Visalia, supra,* 209 Cal.App.4th at p. 420), and the court erred in sustaining the demurrer to the first amended complaint on that basis.

Although the trial court sustained Berkeley's demurrer solely on the basis of the 90-day statute of limitations, Berkeley demurred on the additional ground that the "facts alleged in the Petition show that the Affordable Housing Fee imposed on each of [Schmier's] units as a condition of their conversion to condominiums was not rescinded by City of Berkeley Ordinance No. 7,025." Berkeley reasserts this ground on appeal, asserting Schmier's "interpretation of the lien agreements is incorrect," because he

---

[6] Berkeley asserts it did not interpret the terms of the lien agreements but simply applied "the mathematical formula in the lien agreements to calculate the amount of the Affordable Housing Fees." Schmier, however, is not challenging the calculation itself. Rather, he disputes the city's reading of the agreements as requiring use of the formula set forth in the allegedly rescinded ordinance despite the agreements' provisions that "[i]n the event that the Affordable Housing Fee is . . . rescinded by the City of Berkeley, this lien shall be void and have no effect," a dispute that did not arise until the city disagreed with Schmier.

"conflates the so-called 'rescission' of an ordinance with the rescission of the 'Affordable Housing Fee' defined by the lien agreements."[7]

At this juncture, we have only the amended complaint before us. Schmier alleged that Berkeley "rescinded [Berkeley Municipal Code section] 21.28.060(A) under which the Liens were demanded by [Berkeley] and recorded and instead enacted [Berkeley Municipal Code section] 21.28.070," which provided for a new, differently calculated, Affordable Housing Fee. He further alleged the "Affordable Housing Fee" under the lien agreement specifically referred to the "Affordable Housing Fee required by law," which at the time was Berkeley Municipal Code section 21.28.060(A). In short, Schmier alleged the "Affordable Housing Fee" under the lien agreement was rescinded when Berkeley rescinded the ordinance imposing it.

The language of the lien agreements is ambiguous, rendering both Schmier's alleged interpretation and the Berkeley's asserted construction arguably reasonable. " '[W]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement. So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.' " (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239 (*Aragon-Haas*).) "Where a complaint is based on a written contract which it sets out in full, a general demurrer to the complaint admits not only the contents of the instrument but also any pleaded meaning to which the instrument is

---

[7] " 'We affirm if any ground offered in support of the demurrer was well taken.' " (*Modacure v. B&B Vehicle Processing, Inc.* (2018) 30 Cal.App.5th 690, 694, italics omitted.)

reasonably susceptible. [Citation.] While plaintiff's interpretation of the contract ultimately may prove invalid, it was improper to resolve the issue against her solely on her own pleading. 'In ruling on a demurrer, the likelihood that the pleader will be able to prove his allegations is not the question.' "[8] (*Aragon-Haas*, at p. 239.)

Schmier's first amended complaint does not place a " 'clearly erroneous construction' " on the voidness provisions of the lien agreements. (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.) Accordingly, sustaining the demurrer on this ground would likewise have been improper.

## DISPOSITION

The judgment is reversed with directions to the superior court to vacate its order sustaining the demurrer to the first amended complaint without leave to amend and enter a new order overruling the demurrer. Schmier is entitled to recover his costs on appeal.

---

[8] Indeed, extrinsic evidence may be necessary to show the meaning of the lien agreement. " 'Where the meaning of the words used in a contract is disputed, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning. [Citations.] . . . Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is . . . reasonably susceptible.' " (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1350–1351.)

                                  _____

                                  Banke, J.

We concur:

_____
Margulies, Acting P.J.

_____
East, J.*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KENNETH J. SCHMIER,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>     Defendant and Respondent. | A161556<br><br>(Alameda County<br>Super. Ct. No. RG19036596)<br><br>ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION<br><br>[NO CHANGE IN<br>JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on February 25, 2022, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.


Dated: _____

                Margulies, Acting      P. J.

Trial Court: Alameda County Superior Court

Trial Judge: Hon. Kimberly E. Colwell

Counsel:

Garfinkle Law Office, Gary S. Garfinkle and Maria J. Garfinkle, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Susan M. Carson, Dane C. Barca and Nimrod P. Elias Deputy Attorneys General for Defendants and Respondents.

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A161556, *Schmier v. City of Berkeley*