Filed 1/10/24  NNN Congress Center v. Locoh CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NNN CONGRESS CENTER, LLC et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>ETIENNE LOCOH et al.,<br><br>    Defendants and Respondents. | G061889<br><br>(Super. Ct. No. 30-2018-01015717)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.

Catanzarite Law Corporation, Kenneth J. Catanzarite, and Tim James O'Keefe for Plaintiff and Appellant.

Thomas E. Walling for Defendants and Respondents.

\*        \*        \*

Plaintiff NNN Congress Center, LLC (NNNCC) by Milton O. Brown, liquidating trustee, appeals from the court's order granting summary judgment in favor of defendants Etienne Locoh, Todd Mikles, SCMG Liquidation, Inc. (formerly Sovereign Capital Management Group, Inc.), and Infinity Urban Center, LLC (IUC). In granting summary judgment, the court analyzed NNNCC's operating agreement and held Milton O. Brown did not have standing to bring claims on the company's behalf as its liquidating trustee.

On appeal, plaintiff disagrees with the court's interpretation of the operating agreement and argues Brown had standing to sue for NNNCC as its liquidating trustee. We disagree with plaintiff's contention and affirm the judgment.

FACTS

*Plaintiff's Complaint*

In 2021, NNNCC through its purported liquidating trustee, Milton O. Brown, filed the operative third amended complaint against defendants and other entities that are not parties to this appeal. According to the complaint, NNNCC is a Delaware limited liability company, and its former manager was NNN Realty Investors, LLC (formerly Grub & Ellis Realty Investors, LLC) (NNNRI). Defendants Locoh and Mikles allegedly controlled NNNRI and accordingly managed NNNCC. Defendants Locoh and Mikles also allegedly controlled various entities, including defendants IUC and SCMG Liquidation, Inc. (formerly Sovereign Capital Management Group, Inc.).

The complaint further alleged NNNCC owned a 28.879 percent tenant in common interest in certain property (the Property). NNNCC and its members purportedly "were kept completely in the dark regarding . . . the recommendation and sale of the . . . Property." The sale "was not subject to any independent review for . . . numerous conflicts of interest . . . and was handled to benefit" defendants Locoh and Mikles. Defendants Locoh and Mikles allegedly used defendants IUC and SCMG "as a

2

mere shell and naked framework to convert the equity in all plaintiffs' real property to cash and securities and distribute the same to themselves and their affiliates for their own personal financial gain." The Property was ultimately sold in 2012 based on an appraised value of $95 million. Among other things, the complaint alleged the appraisal was fraudulent and that the Property was actually worth around $115 million.

Based on the above allegations, the complaint asserted various causes of action, including a claim for breach of fiduciary duty.[1] Brown, the purported liquidating trustee, brought the claims on behalf of NNNCC. Brown's standing is central to the instant appeal. The complaint alleged Brown acquired a membership interest in NNNCC, which later dissolved due to the sale of the Property. NNNRI also was "Franchise Tax Board forfeited" so NNNCC no longer had a manager. Relying on NNNCC's operating agreement, the complaint alleged Brown "as a member holding LLC Units [was] empowered to pursue collection of NNNCC's assets and claims on behalf of NNNCC . . . ."

*Defendants' Summary Judgment Motion*

In December 2021, defendants moved for summary judgment, or in the alternative summary adjudication. Among other things, they argued Brown lacked standing to bring claims on behalf of NNNCC. To support this argument, they relied on section 13.5 of NNNCC's operating agreement which included the following provision

---

[1] The record is ambiguous as to the remaining causes of action. Although the complaint included claims for intentional interference with prospective economic advantage and conversion, the court later dismissed these on demurrer. Plaintiff also voluntarily dismissed negligence claims without prejudice. It appears plaintiff requested to voluntarily dismiss another claim for tortious interference, but the court's minute order does not suggest this claim was dismissed. Finally, the complaint indicated claims for negligent misrepresentation as well as fraud and deceit were "[d]ismissed without prejudice," but the court's minute order does not state these claims were dismissed. Plaintiff's opening brief also suggests the latter claims are still at issue.

3

regarding liquidation of assets: "Upon a dissolution of the Company, *the Manager (or in case there is no Manager, the Members or person designated by a Majority Vote)* shall take full account of the Company assets and liabilities, shall liquidate the assets as promptly as is consistent with obtaining the fair market value thereof, and shall apply and distribute the proceeds therefrom . . . ." (Italics added.) Defendants first argued Brown was not even a member of NNNCC and claimed he was instead a member of NNN Congress Center Member, LLC, which was in turn a member of NNNCC. In any event, they claimed Brown was "neither the Manager, all of the Members, nor a person designated by a Majority Vote" as required under section 13.5 of the operating agreement. Given these facts, they argued Brown had no standing to bring claims for NNNCC.[2]

In opposition to defendants' motion for summary judgment, plaintiff argued Brown had standing to bring claims on behalf of NNNCC. Contrary to defendants' assertion, plaintiff claimed Brown was a member of NNNCC. Plaintiff emphasized a Schedule K-1 tax form identified Brown as a member of NNNCC and a ballot sent to Brown for approval of the sale was a ballot for NNNCC. Plaintiff next argued Brown, as a single member, could unilaterally act on behalf of NNNCC. To support this argument, plaintiff disagreed with defendants' interpretation of section 13.5 of the operating agreement. Plaintiff acknowledged NNNCC had no manager after it was dissolved in July 2016 and noted Brown had paid around $2,300 to reinstate the company to act as its liquidating trustee in 2018. Plaintiff then focused on the following language in section 13.5: "in case there is no Manager, the Members or person designated by a Majority Vote . . . ." Plaintiff argued defendants' "interpretation of 'the Members' as meaning only 'all Members'" was "unreasonable on its face because it would be immediately

_____

[2] Although the parties raised additional arguments in their briefing on the summary judgment motion, we need not address them because the instant appeal focuses on one issue — whether Brown has standing to sue for NNNCC as its liquidating trustee.

rendered as surplusage by disjunctive alternative '*or* person designated by a majority vote.'"  Plaintiff also argued defendants' interpretation was precluded by section 17.8 of the operating agreement, which eliminated the distinction between plural and singular forms:  "Whenever required by the context hereof, the singular shall include the plural, and vice versa . . . ."  Finally, plaintiff claimed defendants refused to provide a list of NNNCC's members to Brown so he could not contact members to vote on a manager or liquidating trustee.

*Order Granting Defendants' Summary Judgment Motion*

The court granted defendants' motion for summary judgment but provided plaintiff with 30 days to amend the complaint so Brown could bring derivative claims on behalf of NNNCC.  The court found NNNCC was dissolved as of July 2016 and Brown was not entitled to bring claims on behalf of NNNCC.  In reaching this conclusion, the court relied on section 13.5 of the operating agreement, which permits "'the Manager (or in case there is no Manager, the Members or person designated by a Majority Vote)'" to take certain actions upon a dissolution of the company.  The court noted two undisputed facts:  (1) Brown was not the manager of NNNCC; and (2) he was not authorized to bring claims on behalf of NNNCC by a majority vote of its members.

The court next focused on "the Members" language in section 13.5 and rejected plaintiff's suggestion "that Members, plural, should be deemed to include Member, singular, pursuant to [section] 17.8 of the Operating Agreement . . . ."  The court noted the latter provision provides:  "'Whenever required by the context hereof, the singular shall include the plural, and vice versa.'"  According to the court, "the context [did] not require such an interpretation.  To the contrary, the Operating Agreement envisions any already-selected Manager being in charge, but if there is no such person, then the person who may take full account of the Company's assets and liabilities would be either all the Members or someone selected by a majority vote of the Members.  The

5

notion of one person unilaterally declaring himself to be in charge of taking full account of the Company's assets and liabilities is flatly contrary to the context of the Operating Agreement."

After the deadline passed for plaintiff to file an amended complaint, the court entered judgment in defendants' favor in August 2022.[3]  Plaintiff appealed.

## DISCUSSION

Plaintiff contends the court erred by granting defendants' motion for summary judgment because Brown has standing to sue for NNNCC as its liquidating trustee.  For the reasons below, we disagree.

*Standard of Review*

An appellate court reviews a grant of summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained."  (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 334.)  "[W]e [accordingly] assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment."  (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)  The motion shall be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

---

[3]  On appeal, plaintiff explains Brown opted not to amend the complaint "because as a liquidating trustee under Delaware law he has no personal lability" but "as a derivative plaintiff he could potentially be exposed."

6

*Applicable Law Regarding Interpretation of Contracts*

At the outset, we note the operating agreement contained the following Delaware choice of law provision: "This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without regard to conflict of laws principles), where this Agreement is made and entered into." Neither party disputes Delaware law applies.

"'Delaware law adheres to the objective theory of contracts, *i.e.,* a contract's construction should be that which would be understood by an objective, reasonable third party.'" (*Salamone v. Gorman* (Del. 2014) 106 A.3d 354, 367-368.) Delaware courts interpret contracts "'as a whole and . . . give each provision and term effect, so as not to render any part of the contract mere surplusage,' and 'will not read a contract to render a provision or term meaningless or illusory.'" (*In re Shorenstein Hays-Nederlander Theatres LLC Appeals* (Del. 2019) 213 A.3d 39, 56.) If the contract is clear and unambiguous, courts "'give effect to the plain-meaning of the contract's terms and provisions.'" (*Id.* at pp. 56-57.)

California law is in accord. "The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. [Citation.] 'The words of a contract are to be understood in their ordinary and popular sense.'" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) "California [also] recognizes the objective theory of contracts [citation], under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation' [citation]. The parties' undisclosed intent or understanding is irrelevant to contract interpretation." (*Id.* at p. 956.) Each part of the contract must be interpreted with reference to the entire agreement. (Civ. Code, § 1641.) "Construction cannot lead to unfair or absurd results but must be reasonable and fair."

(*California National Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 143.) In construing a contract, courts also look to "the circumstances under which it was made, and the matter to which it relates." (Civ. Code, § 1647.)

"The ultimate construction placed on the contract might call for different standards of review." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., supra,* 109 Cal.App.4th at p. 955.) Where, as here, "no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract." (*Ibid.*)

*The Court Did Not Err by Granting Summary Judgment in Favor of Defendants*

We first turn to the language of NNNCC's operating agreement. As noted *ante*, section 13.5 of the operating agreement provides: "Upon a dissolution of the Company, *the Manager* (*or in case there is no Manager, the Members or person designated by a Majority Vote*) shall take full account of the Company assets and liabilities, shall liquidate the assets as promptly as is consistent with obtaining the fair market value thereof and shall apply and distribute the proceeds therefrom . . . ." (Italics added.) By its terms, this language limits standing to: (1) NNNCC's manager; (2) the members; or (3) a person designated by a majority vote of members.

Here, plaintiff concedes Brown was not NNNCC's manager or a "person designated by a Majority Vote." The only issue is whether Brown has standing given "the Members" language in section 13.5. Assuming Brown was a member of NNNCC (which defendants dispute), he still does not have standing because section 13.5 does not allow a single member to unilaterally appoint himself as the liquidating trustee and wind up the company's affairs. This is consistent with Delaware law. Delaware Code Annotated, title 6, section 18-803, subdivision (a) provides: "Unless otherwise provided in a limited liability company agreement, *a manager* who has not wrongfully dissolved a limited liability company *or, if none, the members or a person approved by the members,*

8

*in either case, by members who own more than 50 percent of the then current percentage or other interest in the profits of the limited liability company owned by all of the members*, may wind up the limited liability company's affairs; *but the Court of Chancery*, upon cause shown, *may wind up the limited liability company's affairs upon application of any member or manager*, or the member's personal representative or assignee, *and in connection therewith, may appoint a liquidating trustee*."[4] (Italics added.) Like the operating agreement, the statute suggests only a manager or members have standing to wind up a company's affairs. But an individual manager or member also may wind up the company's affairs if he or she files an application with the Delaware Court of Chancery.

Plaintiff contends the trial court's interpretation of section 13.5's "'the Members'" as meaning only "'all the Members'" is precluded by section 17.8 of the operating agreement. The latter section states in pertinent part: "Whenever required by the context hereof, the singular shall include the plural, and vice versa . . . ." As the trial court noted, the context here does not require "the Members" to be interpreted to include the singular — "a Member." The operating agreement contemplates an already-selected manager being in charge, and if there is no manager, all the members or a person selected by a majority vote of members can take account of the company's assets and liabilities. The operating agreement does not suggest a single person can unilaterally declare himself to be the liquidating trustee. This is reinforced by other provisions in the operating agreement. Section 8.1 states: "No member . . . is an agent of [NNNCC]." Other sections indicate members may vote for winding up of NNNCC, and such action requires a "Majority Vote of the Members to pass and become effective."

Plaintiff next argues the trial court's interpretation creates an impossibility because "no majority is possible nor all members together because there is no Manager

---

[4] All further statutory references are to this Code.

9

and no way for Brown to have a meeting/hold a vote because he does not have the contact information for the other members and [defendants] refuse to give Brown that information." Not true. Brown could have sought appointment as liquidating trustee by filing an application with the Delaware Court of Chancery. (§ 18-803, subd. (a).) Indeed, Brown concedes this point and requests we remand to the trial court so he can petition for formal appointment as liquidating trustee. He relies on the following venue provision in the operating agreement: "Any Action relating to or arising out of this Agreement may be brought in a court of competent jurisdiction located in Orange County, California, or Wilmington, Delaware." This venue provision does not alter the relevant law — Brown was required to file an application with the Delaware Court of Chancery. (§ 18-803, subd. (a).) He did not do so and instead declared himself the liquidating trustee.

Finally, plaintiff complains the trial court previously rejected defendants' standing arguments on demurrer but cites no law suggesting the court could not change its decision at the summary judgment stage. In overruling defendants' demurrer to plaintiff's second amended complaint, the court found: "Plaintiff alleges, consistent with §§13.1.2 and 13.5 of [NNNCC's] Operating Agreement, that the Company has been dissolved due to the sale of the property, that there is no longer any Manager of the LLC because NNNRI has been Franchise Tax Board forfeited, and that as a Member of the LLC, plaintiff is thus entitled to take full account of the Company's assets and liabilities and liquidate the assets, including initiating legal actions . . . ." While it appears the court's ruling on summary judgment was inconsistent with its prior ruling on the demurrer, the complaint only needed to set forth a reasonable contract interpretation to survive demurrer. The court was required to "'accept as correct plaintiff's allegations as to the meaning of the agreement'" where the agreement was ambiguous. (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239.) "[P]laintiff's interpretation of the contract ultimately may prove invalid, [but] it was improper to

10

resolve the issue against [plaintiff] solely on [the] pleading." (*Ibid.*)  In the interests of justice and judicial economy, the court also retained the power to change its prior ruling. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108.)  The parties had an opportunity to have a hearing and fully brief the issue twice at the demurrer and summary judgment stages.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.


11