Filed 12/16/25 Kolstad v. Northstar Memorial Group CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RYAN P. KOLSTAD,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>NORTHSTAR MEMORIAL GROUP,<br><br>　　　Defendant and Respondent. | A172312<br><br>(San Mateo County<br>Super. Ct. No. 24-CIV-01135) |

　　　Appellant Ryan Kolstad sued his former employer, respondent Northstar Memorial Group, six years after he left his job with the company, alleging ten causes of action. He appeals from the judgment entered after the trial court sustained Northstar's demurrer without leave to amend. We largely affirm, except we conclude that Kolstad should be allowed to amend his complaint to try again to state a valid cause of action for breach of contract. We therefore reverse with respect to that one claim and remand for further proceedings.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

　　　The following facts are taken from Kolstad's operative complaint and must be accepted as true for purposes of reviewing a ruling on a demurrer. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

1

Northstar hired Kolstad, who is white, in 2011 to work as a family services counselor at Skylawn Memorial Park selling funeral and cemetery arrangements. A man with the last name Lim (his first name does not appear in the operative complaint) allegedly had supervisory power over Kolstad. According to the complaint, from the time Kolstad was hired in 2011 and up until September 2023—a time period when Kolstad left Skylawn, worked for two other cemeteries, and at one point returned to work at Skylawn—Lim mistreated Kolstad both personally and professionally. Lim demoted Kolstad in June 2012 and deprived him of the assignments needed to make sales, and Kolstad resigned in December 2013.

In September 2016, Lim "invited [Kolstad] back" to work at Northstar, but after Kolstad returned Lim continued to "bully," "sabotage," and retaliate against him. Lim told coworkers that Kolstad was "lazy," had "white privilege," and "had a spoiled upbringing." Lim also "tried to frame" Kolstad for misconduct by conspiring with another coworker.

Kolstad filed a wage claim with the California Labor Commission. In May 2018 he entered into a settlement agreement with Northstar (hereafter 2018 settlement agreement), which he attached to his operative complaint. Northstar denied wrongdoing but agreed to pay Kolstad $30,000 in exchange for him dropping his claim with the commission. The agreement includes a clause titled "Non-disparagement," which provides in full: "KOLSTAD agrees not to in any way disparage NORTHSTAR or Releasees at any time following the signing of this AGREEMENT. In response to any third party inquiries by prospective employers, NORTHSTAR agrees it shall only provide KOLSTAD'S dates of employment and job title." The agreement is signed by Kolstad and Northstar's senior vice president of sales for the western division.

In June 2018 Kolstad applied for jobs at two other cemeteries, but one of them did not hire him even though he was qualified for the position. Around the time Kolstad was told he would not be hired, Lim sent him a "vulgar text message video depicting sexual acts." The second cemetery offered Kolstad a position in August 2018. After Kolstad started working at the new cemetery, Lim continued to harass Kolstad and say negative things about him to his new coworkers. In March 2020 Lim told the vice president of human resources at Kolstad's then employer to tell Kolstad that he was being furloughed because of low production. Kolstad was terminated from his position at the different cemetery later that month, at the start of the Covid-19 pandemic.

Kolstad began working for yet another cemetery in May 2022. In early 2023 Lim sent Kolstad a "harassing and retaliatory email message" to his work email that included a link to books about therapy and narcissism, as a way to "poke fun" at Kolstad for seeing a therapist. Lim also told Kolstad's employer to fire Kolstad, which the employer did in May 2023, purportedly because he tried to sell "prearrangements" to someone in a different state. In August 2023, Kolstad applied to work again for Northstar, but he was told in September that he would not be rehired. According to Kolstad, Lim influenced this decision based on Kolstad's race and the fact Kolstad previously had complained about wage and hour violations. The operative complaint alleges that Lim at all relevant times was "executing orders and direction" to Northstar, and the complaint also includes a boilerplate allegation that each defendant was the agent of other defendants, and "was at all times . . . acting within the course and scope of said agency."

Proceeding without an attorney, Kolstad in February 2024 sued Northstar and Lim.[1]  He alleged 10 causes of action, including one for breach of contract, but not one for tortious interference.  After the trial court sustained with leave to amend a demurrer filed by Lifemark and granted the company's motion to strike Kolstad's request for punitive damages, Kolstad filed a first amended complaint.  The cover sheet of the complaint names only Northstar as a defendant.  Kolstad again alleged 10 causes of action, only four of which are at issue in this appeal: breach of contract, defamation, failure to prevent harassment and retaliation in violation of California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq., (FEHA)), and "tortious interference," a cause of action that, as we have said, was not included in his original complaint.  (Formatting omitted.)

Attached to Kolstad's first amended complaint was a right-to-sue letter dated February 16, 2024, from the California Civil Rights Department.  The letter, in turn, attached a February 2024 complaint Kolstad filed with the department that named Lim only.

Northstar filed a motion to strike portions of the first amended complaint along with a demurrer.  Kolstad filed an untimely opposition, which the trial court did not consider.  The court sustained the demurrer without leave to amend as to all 10 causes of action, and Kolstad appealed.  In this appeal he challenges the court's ruling on four causes of action.

---

[1] Kolstad also sued Lifemark Group, which was alleged in Kolstad's original complaint to be a subsidiary of Northstar.

## II.
## DISCUSSION

*A. The Standard of Review.*

"After assuming the truth of the allegations in the complaint, facts that can be inferred from those pleaded, and judicially noticed matters [citation], 'we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' " (*Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 286.) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) "On appeal, we review the trial court's ruling, not the reasons stated for the ruling." (*Fierro, supra,* at p. 286.)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

*B. Kolstad Should Be Allowed to Amend His Cause of Action for Breach of the 2018 Settlement Agreement.*

Kolstad argues that the trial court erred when it sustained Northstar's demurrer as to his cause of action for breach of contract. We conclude that Kolstad should be permitted to amend his cause of action.

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse

5

for nonperformance, (3) the defendant's breach, and (4) the resulting damage to plaintiff." (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.) There is no dispute here that Kolstad and Northstar entered into a valid contract (the 2018 settlement agreement). The parties disagree, however, about the meaning of the contract's non-disparagement clause. Kolstad maintains it meant Northstar and its agents, including Lim, were broadly barred from disparaging him. In contrast, Northstar maintains it meant Northstar was barred only from providing non-specified information to potential employers upon an inquiry into Kolstad's employment with Northstar.

At the outset, we note that some of Kolstad's allegations fall outside the relevant limitations period and therefore cannot be the basis of a cognizable claim. A breach-of-contract cause of action is subject to a four-year statute of limitations (Code Civ. Proc., § 337, subd. (a)), which means that any allegations of conduct that occurred more than four years before Kolstad initiated these proceedings on February 27, 2024, are time-barred. Kolstad alleges, for example, that in June 2018—more than four years before he sued—Lim told a prospective employer that Kolstad "crossed" defendant when Kolstad worked at Northstar. This and other statements allegedly made in 2018 fall outside the limitations period. We reject Kolstad's appellate argument that the trial court "failed to apply well-established tolling doctrines that would extend the statute of limitations for continuing or post-agreement breaches." (Boldface omitted.)

In another allegation Kolstad asserts that in March 2022 Lim directed the human resources director at another cemetery to "make fake job postings" in order to "taunt" him. Although this alleges conduct within the limitations period, it cannot give rise to a cognizable claim because there is no suggestion that any of the postings even mentioned Kolstad, let alone disparaged him.

6

Stripping away these non-cognizable allegations, only three allegations remain that could conceivably support Kolstad's claim for breach of contract: (1) in March 2020 Lim told Kolstad's employer to find a way to fire Kolstad, (2) in May 2021 Kolstad sent an email asking to return to work at a different cemetery (not Northstar), but the email was ignored at Lim's direction, and (3) in May 2022 Lim told another prospective employer to "watch out for [Kolstad] or he will sue you."

Kolstad should be permitted to amend his complaint regarding these allegations under the parties' agreed-upon construction of the non-disparagement clause. Both parties accept that, at the very least, the clause prohibits Northstar from responding to inquiries from prospective employers by providing information other than Kolstad's employment dates and job title. Kolstad's three allegations, however, are silent as to whether Lim's allegedly disparaging actions were taken in response to an inquiry by a prospective employer. Because it is possible that Kolstad could assert such allegations, we remand to give him the opportunity to amend his complaint if he can in good faith allege that any of these actions were taken in response to a potential employer's inquiry.

Kolstad should also be permitted to amend his complaint regarding these allegations under the parties' disputed construction of the non-disparagement clause. In accepting Northstar's narrow interpretation of the clause, the court stated, "As Northstar points out it only had the obligation to refrain from responding to inquiries from prospective employers with anything but Kolstad[']s dates of employment and job title." But, as we have said, Kolstad construes the clause differently. He contends that the clause barred Northstar from disparaging him *at all*, regardless of any inquiry by a prospective employer. At this pleading stage of the case, we cannot conclude

7

that he is wrong as a matter of law, since the clause is at least somewhat ambiguous.

"Whether a contract is ambiguous is a question of law." (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239 (*Aragon-Haas*).) And so is the question of whether contract language is reasonably susceptible of a meaning urged by a party. " 'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" [of] the interpretation urged by the party.' " (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 393.) Extrinsic evidence is relevant to prove a meaning to which the contract's language is reasonably susceptible. (*Id.* at p. 391.) In the context of a demurrer, the court must consider the sufficiency of the allegations, along with any parol-evidence allegations, and determine whether they support the reasonably-susceptible contractual interpretation. (*George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1127–1128.)

Thus, in considering an order sustaining a demurrer without leave to amend, a reviewing court must accept the plaintiff's allegations regarding the construction of an ambiguous contract, so long as the construction is not clearly erroneous. (*Requa v. Regents of University of California* (2012) 213 Cal.App.4th 213, 224; *Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.) This principle requires an insurer seeking a demurrer based on an insurance policy to 'establish conclusively that [the] language unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint. [Citation.] To meet this burden, [the] insurer is required to demonstrate that the policy language supporting its position is so clear that parol evidence would be inadmissible to refute it. [Citation.] Absent this

8

showing, the court must overrule the demurrer and permit the parties to litigate the issue in a context that permits the development and presentation of a factual record, e.g., summary judgment or trial." (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 862.)

The non-disparagement clause here is at least partially ambiguous, and Northstar has not conclusively established the non-applicability of the clause to the three allegations at issue. The title of the clause is "Non-disparagement," but the text ostensibly imposes a unilateral prohibition on Kolstad from disparaging Northstar, while imposing no corresponding duty on Northstar, except in the limited context of responding to an inquiry from a potential employer. It may be that the parties intended that Northstar have no further limitations on disparaging Kolstad, but in our view the language is ambiguous enough to at least warrant providing Kolstad with the opportunity to amend his complaint, if he can, with specific allegations of any parol evidence that supports his construction of the clause. (See Code Civ. Proc., § 1856, subd. (g) [parol evidence may be considered "to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement"].)

We also cannot conclude, as did the trial court, that Kolstad is unable to state a cognizable breach-of-contract claim based on agency principles. At the hearing on Northstar's demurrer, the trial court pressed Kolstad on whether Lim's alleged statements were made on Northstar's behalf or on Lim's "free time" when he was acting "on his own." Kolstad responded that it was "implied" Lim was acting on Northstar's behalf since "[i]f he's messaging me or messaging my managers in the same industry during working hours what—and he's doing it from his office, what else would that be besides a working capacity as an agent of Northstar?" The court stated that "hypothetically, . . . Mr. Lim could just be a jerk" and that Kolstad "ha[d] to

9

allege facts showing that Northstar is behind his actions or he was acting on their behalf to show that he is breaching the contract that you entered into with Northstar."

In its order sustaining Northstar's demurrer, the trial court first concluded that, "[a]t the very least, this cause of action is subject to special demurrer for uncertainty," since it was "unclear whether Kolstad seeks to hold Northstar liable for negligently failing to control Lim[']s conduct outside the scope of his employment which would not be actionable, as there are well-established limits to the doctrine of respondeat superior." The court concluded that it did "not appear plausible that Lim[']s alleged campaign of purported harassment was performed in his capacity as an agent of Northstar, and the [first amended complaint] does not specify whether this was the case."

In its appellate brief, Northstar reiterates its argument that there was no allegation that the company, as opposed to nonsignatory Lim, breached the 2018 settlement agreement. But Northstar could only breach the non-disparagement clause through one of its employees, and the complaint alleged that Lim had a supervisory role at Northstar, since he had the ability to demote Kolstad, and that he "exercised control over the working conditions of [Kolstad's] employment." And the complaint's general allegations could be read to mean that Lim acted as Northstar's agent during the relevant time period, though amendment could make this more explicit. It may be that in agreeing to the non-disparagement clause the parties did not intend for Northstar to be responsible for disparaging comments and conduct of individual employees, including Lim. But at this stage of the proceedings, we cannot interpret the clause as categorically saying so.

10

We therefore remand with directions to give Kolstad the opportunity once again to amend his breach-of-contract cause of action. He should first be allowed to amend the three allegations, if he can, with specific additional allegations that the statements and actions were taken in response to a potential employer's inquiry. He should also be allowed to amend the three allegations, if he can, with specific additional allegations of parol evidence supporting his contention that the parties intended Northstar to be prohibited from disparaging him in any context.

### C. Kolstad Did Not State a Valid Cause of Action for Defamation.

Kolstad also argues that the trial court erred when it sustained Northstar's demurrer to his cause of action for defamation. We are not persuaded.

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; see Civ. Code, §§ 44 [defamation is either libel or slander], 46 [definition of slander].) Kolstad's operative complaint alleged that Lim defamed him in two ways: in July 2018 he made a false statement about him to the manager of a cemetery, and in May 2023 he told a manager at a different cemetery to fire Kolstad because he (Kolstad) had made sales across state lines.[2] As for the first allegedly false statement in 2018, we agree with the trial court that any cause of action based on the statement is barred by the one-year statute of limitations. (Code Civ. Proc., § 340, subd. (c).)

---

[2] We assume for purposes of this opinion that Northstar could be held liable for Lim's alleged statements if Kolstad otherwise stated a valid cause of action.

11

As for the second statement that Kolstad alleged amounted to defamation—Lim's urging that Kolstad be fired because he (Kolstad) made out-of-state sales—Kolstad does not allege (or claim on appeal) that the statement was *false*. Instead, his operative complaint characterizes his sale as "an isolated technicality" and alleges that "[s]elling prearrangements to someone in a different state is not a legitimate purpose to terminate" someone in his position. The closest Kolstad comes to claiming the statement is false is when he alleges in his complaint that making sales across state lines is "a categorically *false* and callous reason to cite for termination." (Italics added.) But this statement is more an indication that Kolstad did not consider making out-of-state sales to be a valid reason to terminate him—not a denial that he actually made the sales. We therefore agree with the trial court that Kolstad's cause of action for defamation fails since he did not allege that the alleged statement was false. (*Taus v. Loftus*, *supra*, 40 Cal.4th at p. 720; Civ. Code, § 46 [element of slander is falsity].)

Kolstad argues generally that the trial court abused its discretion by denying him leave to amend. But he does not address the trial court's conclusion that he failed to allege the falsity of Lim's statement about out-of-state sales, let alone contend that the statement was in fact false. We therefore reject his argument.

### D. Kolstad's Failure to Exhaust Administrative Remedies Was Fatal to His Cause of Action for Failure to Prevent Harassment and Retaliation.

Kolstad contends that his cause of action for failure to prevent harassment and retaliation should have been allowed to proceed, but we again disagree.

"Before pursuing a civil action asserting violation of the FEHA, an employee must file an administrative complaint with the [California Civil

12

Rights Department, formerly the Department of Fair Employment and Housing] and obtain a right-to-sue letter from the agency. [Citations.] 'Exhaustion of these procedures is mandatory; an employee may not proceed in court with a FEHA claim without first obtaining a right-to-sue letter.' [Citations.] Moreover, claims in the employee's civil complaint *that fall outside the scope of the [agency] complaint are barred*." (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1002–1003, italics added; see also *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 63 [" 'The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA.' "].) The trial court sustained Northstar's demurrer to both of Kolstad's FEHA causes of action based on the fact it did not appear he had filed an administrative complaint against Northstar (as opposed to Lim) and that he thus failed to establish administrative exhaustion.

On appeal, Kolstad does not directly address his failure to establish administrative exhaustion. He argues that Northstar was liable for Lim's "continuing wrongful acts not limited to harassment, stalking, and defamation carried out by its employee" under the doctrines of respondeat superior and vicarious liability. But this argument wholly fails to establish the predicate for pursuing such a claim—namely, that Kolstad exhausted his administrative remedies. Because Kolstad failed to establish exhaustion, the trial court did not err in sustaining Northstar's demurrer on this ground.

*E. Kolstad's Cause of Action for Tortious Interference Fails.*

Kolstad also contends that the trial court should have permitted his cause of action for tortious interference to proceed. Once again, we are not persuaded.

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractional relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) Kolstad's operative complaint alleged that he had separate valid contracts with the two other cemeteries where he worked. His cause of action for tortious interference contained two allegations. He alleged that in April 2023 he was about to settle an "employment matter" with one of the other cemeteries but that "DEFENDANTS" directed the chief executive officer of that separate cemetery to cancel a meeting with Kolstad "under the guise of 'technical difficulties.'" Kolstad further alleged that Lim "issued the wrongful termination" of Kolstad in May 2023 from a different cemetery. Kolstad also alleged that Northstar should have known, but did not know, of Lim's interference with his contractual relations.

The trial court concluded that the foregoing allegations did not amount to tortious interference. The order sustaining the demurrer states that "the factual allegations do not show how the canceled meeting or termination by a third-party caused actual disruption or resulted in Kolstad[']s lost wages, commissions, and benefits that were a result of [another cemetery] terminating his employment especially[] where the [first amended complaint] elsewhere alleges [the cemetery] fired Kolstad for selling across state lines."

Even assuming without deciding that Kolstad's factual allegations were sufficient, we conclude that the cause of action fails for another reason. The trial court's order noted that Kolstad's original complaint did not allege a

14

cause of action for tortious interference, and the court's order sustaining the first demurrer with leave to amend "expressly limited the scope of amendment to curing defects in the prior pleading."  The court's order further states:  "Though Northstar did not raise this objection in its demurrer, and although not relied on the Court in ruling on the demurrer, the cause of action would otherwise be subject to a motion to strike made sua sponte by the court."  (See *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 ["Following an order sustaining a demurrer or a motion for judgment on the pleadings with leave to amend, the plaintiff may amend his or her complaint *only as authorized by the court's order*"], italics added.)  "The granting of leave to amend after a demurrer is sustained on one ground does not give the plaintiff a license to add any possible cause of action that might not be subject to dismissal on that ground.  Otherwise, there would be virtually no limitation on amendments following the sustaining of a demurrer."  (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 456.)

Kolstad complains on appeal that this was an improper ground to dismiss his cause of action, but we disagree.  Kolstad himself cites Code of Civil Procedure section 436, subdivision (b), which provides that a court may, upon motion *or at any time in its discretion*, "[s]trike out all or part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."  Kolstad does not claim that it was proper to include a cause of action not previously pleaded.  Instead, he relies on *Jensen v. Home Depot, Inc.* (2018) 24 Cal.App.5th 92 for the proposition that a court may not strike allegations sua sponte unless they are irrelevant, improper, or legally inadmissible under any theory, and only after providing an opportunity to respond.  But the passage he supposedly quotes does not appear in *Jensen*, and our independent research has not located it in any

15

other case. Because we review the trial court's ruling and not the reasons given (or, in this case, explicitly not relied on), we conclude that striking the cause of action for intentional interference was proper. (*Harris v. Wachovia Mortgage, FSB*, *supra*, 185 Cal.App.4th at p. 1022.)

### F. Kolstad Has Not Shown that the Trial Court Abused Its Discretion in Denying Him Leave to Amend.

As we have said, Kolstad argues generally that the trial court abused its discretion in denying him leave to amend his complaint a second time— not only as to the causes of action identified above, but for "all ten causes of action." Again, though, he does not sufficiently identify what additional facts he would have alleged or otherwise address the deficiencies identified by the trial court, with the exception of his cause of action for breach of contract. We thus conclude that Kolstad has failed to meet his burden of establishing an abuse of discretion.

## III.
## DISPOSITION

On its own motion, the court reconsiders its September 29, 2025 rejection of Kolstad's reply brief and accepts the brief for filing as of the date it was submitted.

The trial court's sustaining of Northstar's demurrer is reversed with respect to Kolstad's cause of action for breach of contract insofar as the claim is based on the allegations highlighted in this opinion. The case is remanded to the trial court for further proceedings, including allowing Kolstad to amend his breach-of-contract cause of action. In all other respects, the judgment is affirmed.

Each side shall bear its appellate costs.

16

_____

Humes, P. J.


WE CONCUR:


_____

Banke, J


_____

Smiley, J.


*Kolstad v. Northstar Memorial Group* A172312


17